# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1205 |
| COMPLETE TITLE: | First Weber Group, Inc. and James R. Imhoff, Jr., |
| |           Petitioners-Appellants-Petitioners, |
| |    v. |
| | Synergy Real Estate Group, LLC and James N. Graham, |
| |           Respondents-Respondents. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 353 Wis. 2d 492, 846 N.W.2d 348)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 41

| | |
|---|---|
| OPINION FILED: | March 24, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 4, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Juan B. Colás |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioners-appellants-petitioners, there were briefs by *Kim Moermond*, *General Counsel*, Madison, and oral argument by *Kim Moermond*.

For the respondents-respondents, there was a brief filed by *James N. Graham, Accession Law LLC,* Madison, and oral argument by *James N. Graham.*

An amicus curiae brief was filed by *Debra P. Conrad* on behalf of the Wisconsin Realtors Association.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1205
(L.C. No. 2012CV4349)

STATE OF WISCONSIN      :      IN SUPREME COURT

**First Weber Group, Inc. and James R. Imhoff, Jr.,**

      **Petitioners-Appellants-Petitioners,**

     **v.**

**Synergy Real Estate Group, LLC and James N. Graham,**

      **Respondents-Respondents.**

**FILED**

MAR 24, 2015

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, First Weber Group, Inc. v. Synergy Real Estate Group, LLC, 2014 WI App 41, 353 Wis. 2d 492, 846 N.W.2d 348, which affirmed the circuit court's[1] order denying First Weber Group, Inc.'s petition to compel arbitration.[2]

_____

[1] The Honorable Juan B. Colás, Dane County Circuit Court, presided.

[2] First Weber Group, Inc. and James R. Imhoff, Jr.
(continued)

¶2 An arbitration panel ordered James N. Graham[3] to pay First Weber for a disputed real estate brokerage commission. After Graham failed to pay, First Weber filed an action in circuit court to confirm the arbitration award. In that confirmation action, First Weber also requested the court to award it "costs and reasonable attorney fees" and "such other relief as the Court deems just and equitable." The circuit court ordered Graham to pay First Weber the commission awarded in the arbitration. However, the circuit court denied First Weber's request for costs and reasonable attorney's fees, reasoning that, "[u]nder Wis. Stat. § 814.01, no costs may be awarded when confirming an arbitration award." Graham paid only the commission award.

¶3 First Weber subsequently filed an arbitration request with the Realtors Association of South Central Wisconsin, Inc. ("Realtors Association"), of which First Weber and Graham were

---

("Imhoff") are the named petitioners. First Weber Group and Imhoff are members of the Realtors Associations of South Central Wisconsin, Inc. Imhoff is a licensed real estate broker and the owner and chief executive officer of First Weber Group, which is a real estate business entity licensed to do business in Wisconsin. We will refer to the petitioners as "First Weber."

[3] Graham and Synergy Real Estate Group, LLC ("Synergy") are the two named respondents. Graham was an officer and a member of Synergy until he resigned his membership therein, on October 16, 2009. On December 31, 2009, Graham dissolved Synergy. Synergy was a real estate business entity licensed to do business in Wisconsin. Graham is a licensed real estate broker and was a member of the Realtors Association of South Central Wisconsin, Inc. We will refer to the respondents as "Graham."

members. First Weber's arbitration request asked the Realtors Association to arbitrate a contractual dispute over "costs and reasonable attorney's fees" because judicial confirmation of the commission award was necessary. The Realtors Association scheduled the matter regarding costs and reasonable attorney's fees for arbitration. Graham refused to attend the arbitration hearing regarding costs and reasonable attorney's fees. As a result, no arbitration hearing was held. First Weber then filed a petition in circuit court to compel arbitration of the dispute over costs and reasonable attorney's fees, arguing that Graham was bound by an arbitration agreement. The circuit court denied the petition, holding that First Weber's arbitration request was untimely. The court of appeals affirmed, also concluding that the arbitration request was untimely.

¶4 Graham argues that First Weber's petition to compel arbitration was correctly denied because it was untimely. Although Graham concedes that he is bound by an arbitration agreement, he argues that it does not require him to arbitrate untimely claims. Graham also argues that, on grounds of estoppel, First Weber cannot arbitrate the dispute over costs and reasonable attorney's fees because it did not appeal the circuit court's resolution of this dispute in the previously filed action confirming the arbitrator's award of the commission.

¶5 First Weber argues that an arbitrator, rather than a court, should decide whether its arbitration request was timely. First Weber also argues that its arbitration request was timely.

3

First Weber further argues that it is not barred on grounds of estoppel from arbitrating the dispute over costs and reasonable attorney's fees.  Finally, First Weber argues that the circuit court in the present action erred by failing to defer to the Realtors Association's determination that this dispute is arbitrable.

¶6  We conclude that under the arbitration agreement, Graham's timeliness and estoppel defenses against arbitration are to be determined in the arbitration proceedings, not by a court in a proceeding under Wis. Stat. § 788.03[4] to compel

---

[4] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.  Wisconsin Stat. § 788.03 (2011-12) provides in relevant part:

> The party aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration may petition any court of record having jurisdiction of the parties . . . for an order directing that such arbitration proceed as provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure, neglect or refusal to perform the same is in issue, the court shall proceed summarily to the trial thereof.

4

arbitration.[5] Graham's timeliness and estoppel defenses against arbitration are procedural arbitrability issues to be determined during the arbitration process, rather than by a court. Graham has not overcome the presumption in favor of arbitration. Accordingly, we reverse the court of appeals' decision and remand the cause to the circuit court with the instruction that First Weber's petition to compel arbitration be granted.[6]

---

[5] The circuit court and court of appeals did not rely on Graham's estoppel argument. Before the circuit court, Graham's estoppel argument relied on issue preclusion and claim preclusion. However, Graham's response brief to this court devotes less than one page to his estoppel argument and does not indicate which type of estoppel he is relying upon. We do not separately address Graham's estoppel argument. For the same reasons that we conclude that Graham's timeliness argument is to be determined during the arbitration process, we conclude that his estoppel argument is to be determined during the arbitration process, not by a court. See also Cirilli v. Country Ins. & Fin. Servs., 2009 WI App 167, ¶18, 322 Wis. 2d 238, 776 N.W.2d 272 ("Evaluating the collateral estoppel effect of the prior judgment does not challenge the validity of the arbitration clause or call into question whether this dispute falls within the scope of the arbitration clause. Therefore, the effect of the prior judgment on this dispute is an issue to be decided by an arbitrator.") (citations omitted).

[6] We do not resolve whether First Weber's arbitration request is barred on grounds of timeliness or estoppel because these issues are to be determined in the arbitration process. We express no opinion on whether these issues of timeliness or estoppel have already been decided in the arbitration process or how a Realtors Association arbitrator should rule on these issues if subsequently confronted with them. Because we conclude that the circuit court erred by determining the procedural question of whether First Weber's arbitration request was timely, we do not determine whether the circuit court erred by showing no deference to the Realtors Association's determination that the present dispute is arbitrable.

5

## I. FACTUAL BACKGROUND

¶7 First Weber is a member of the Realtors Association. Graham was a member of the Realtors Association from January 2006 through the end of 2011. In order to become a member of the Realtors Association, every prospective member must sign a membership application form that states: "I agree to abide by the Code of Ethics of the National Association of REALTORS®, and the Constitution, Bylaws, Rules and Regulations of [the Realtors Association of South Central Wisconsin], the State Association and the National Association." It is undisputed that Graham and First Weber signed this document.

¶8 The agreement to arbitrate is contained in the Code of Ethics of the National Association of Realtors ("Code of Ethics"), which Realtors Association members are obliged to follow. Article 17 of the Code of Ethics and Standards of Practice reads in relevant part:

> In the event of contractual disputes or specific non-contractual disputes as defined in Standard of Practice 17-4 between REALTORS® (principals) associated with different firms, arising out of their relationship as REALTORS®, the REALTORS® shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter.

Article V, section 7 of the Constitution of the Realtors Association states that its members must follow the Code of Ethics' arbitration requirement.

¶9 The Code of Ethics also requires that a request for arbitration be filed in a timely manner. Section 47(a) of the

Code of Ethics and Arbitration Manual provides in relevant part: "Requests for arbitration must be filed within one hundred eighty (180) days after the closing of the transaction, if any, or within one hundred eighty (180) days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later." Several Realtors Association publications, including its standardized form for requesting arbitration, contain a similar timeliness requirement with virtually identical language. Section 47(a) further provides that the 180-day time limit is suspended under certain circumstances and that questions concerning this suspension "will be determined by the Board President or the President's designee."[7]

¶10 First Weber paid a brokerage commission to Graham because he represented a buyer who purchased real estate

---

[7] Section 47(a) of the Code of Ethics and Arbitration Manual provides in relevant part:

> Suspension of filing deadlines: If the Board's informal dispute resolution processes (e.g., ombudsmen, mediation, etc.) are invoked or initiated by a complainant (or potential complainant) with respect to an otherwise potentially arbitrable matter that becomes the subject of a subsequent arbitration request, the one hundred eighty (180) day filing deadline shall be suspended beginning with the date of the complainant's (or potential complainant's) request for informal dispute resolution service or assistance and shall resume when the informal dispute resolution procedures are concluded or terminated. Questions about when informal dispute resolution began or ended will be determined by the Board President or the President's designee.

property being sold by First Weber in the fall of 2008. First Weber later determined that Graham was not entitled to the commission.

¶11 First Weber and Graham agreed to arbitrate the dispute over the brokerage commission. Specifically, on February 25, 2009, First Weber signed a standardized Realtors Association form for requesting arbitration. On April 8, 2009, Graham signed a standardized Realtors Association form agreeing to First Weber's arbitration request. Each form stated:

> In the event I do not comply with the arbitration award and it is necessary for any party to this arbitration to obtain judicial confirmation and enforcement of the arbitration award against me, I agree to pay the party obtaining such confirmation the costs and reasonable attorney's fees incurred in obtaining such confirmation and enforcement.

¶12 On October 8, 2009, a Realtors Association arbitration panel held a hearing and ordered Graham to pay $5,440 to First Weber within the next 15 days. Graham failed to pay. On October 7, 2010——almost one year after the arbitration award was ordered——First Weber filed an action under Wis. Stat. § 788.09 (2009-10)[8] to confirm the $5,440 arbitration award.[9] In its

---

[8] Wisconsin Stat. § 788.09 (2009-10) provides:

> At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected under s. 788.10 or 788.11.

[9] Dane County case no. 10CV5329.

8

initial filing, First Weber "pray[ed] for an order confirming the arbitration award, for entry of judgment in conformity therewith, against the Respondents individually (jointly and severally liable), and award [First Weber] costs and reasonable attorney fees, and for such other and further relief as the Court deems just and equitable."

¶13 On March 8, 2011, in a non-final written order,[10] the circuit court[11] confirmed the $5,440 arbitration award for the commission. On March 16, 2011, in a non-final written order,[12] the circuit court denied First Weber's claim for costs and reasonable attorney's fees. The circuit court reasoned that

> [t]he exception to the American rule is narrowly drawn to permit arbitrators, not the court, to award costs and fees where such fees are expressly provided for in the arbitration agreement. [citations omitted] Under Wis. Stat. § 814.01, no costs may be awarded when confirming an arbitration award. [citation omitted] This statutory rule is not altered by a contract provision.

First Weber filed a motion for reconsideration 14 days later.

---

[10] The circuit court stated that "[t]his Order is not the final document this Court will issue for purposes of the time limit for appeal."

[11] The Honorable John C. Albert, Dane County Circuit Court, presided over the confirmation action.

[12] See Werner v. Hendree, 2011 WI 10, ¶62, 331 Wis. 2d 511, 795 N.W.2d 423 (citation omitted) ("[A] document must meet three conditions in order to be considered a final judgment or order for purposes of appeal: the document must (1) be entered by the circuit court, (2) dispose of the entire matter in litigation as to one or more parties, and (3) state on its face that it is the final document for purposes of appeal.").

9

¶14 On October 14, 2011, in a non-final oral ruling, the circuit court again confirmed the arbitration award and ordered Graham to pay the $5,440 commission awarded in the arbitration within 30 days. The court denied First Weber's claim for costs and reasonable attorney's fees, reasoning that "the weight of authority precludes me from awarding attorney's fees especially in this case where both parties are attorneys . . . ." On October 31, 2011, Graham sent a check to First Weber in the amount of $5,440. The check was accompanied by a letter stating that, by cashing the check, First Weber would agree to "satisfy any and all claims against [Graham] which were raised or which could have been raised in [the confirmation action] or in the underlying commission and arbitration dispute. [First Weber] release[s] [Graham] from any further liability arising therefrom."

¶15 On December 5, 2011, the circuit court issued a final written order denying costs and reasonable attorney's fees, reasoning that the court "does not have authority to award costs and fees in a confirmation proceeding." The circuit court also explained that its decision

> resolves only the confirmation itself, and does not involve any other claims, or potential claims, from the underlying transaction; nor does it address, or negate the validity and/or enforceability of the Arbitration Agreement between the parties, or any other issues arising from it, excepting only the award provided in the arbitration proceedings.

¶16 On or about May 8, 2012, First Weber requested the Realtors Association to arbitrate the contractual dispute with

10

Graham over costs and reasonable attorney's fees allegedly due because First Weber previously had to file a Wis. Stat. § 788.03 action to confirm the arbitration award for the commission. On June 5, 2012, the Realtors Association notified Graham that First Weber's arbitration request had been referred to a Realtors Association hearing panel. On August 27, 2012, the Realtors Association notified Graham that an arbitration hearing was scheduled for September 26, 2012. On September 11, 2012, Graham sent an e-mail to the Realtors Association's professional standards administrator, stating that he would not attend the hearing. On September 26, 2012, the arbitration panel convened at the scheduled time and Graham did not appear. At the hearing, a Realtors Association official called Graham, who said that he would not attend the hearing. The arbitration panel determined that it could not arbitrate the matter without Graham present, so it cancelled the hearing.

## II. PROCEDURAL HISTORY

¶17 On November 2, 2012, First Weber filed a Wis. Stat. § 788.03 petition to compel Graham to arbitrate. The petition sought to compel arbitration of the parties' dispute over payment of costs and reasonable attorney's fees. According to First Weber, Graham was contractually obligated, under the language of the agreement to arbitrate, to pay the costs and reasonable attorney's fees that First Weber incurred in the previous court confirmation action.

¶18 On April 12, 2013, the circuit court denied the petition to compel arbitration. In its ruling, the circuit

11

court first rejected Graham's argument that First Weber's claim for costs and reasonable attorney's fees was barred by issue preclusion or claim preclusion.[13] In so doing, the court reasoned that Graham, by virtue of his membership in the Realtors Association, "agreed to submit to arbitration any dispute with another member arising from their relationship as Realtors. A dispute about payment of fees and costs incurred in confirming an arbitration award under the agreement is within the scope of arbitrable disputes." However, the court nonetheless denied the petition to compel arbitration because it concluded that the request to arbitrate was untimely. Specifically, the court held that "the dispute was no longer arbitrable"[14] because it found that First Weber's arbitration request was filed beyond a 180-day time limit imposed by the arbitration agreement and Realtors Association's rules. Hence,

---

[13] The circuit court stated that, in the prior confirmation action, the circuit court:

> did not consider or decide on the merits whether [First Weber] was entitled under the arbitration agreement to recover the costs of confirming the award. The court simply decided that the statutory fees and costs did not apply . . . and that in an [sic] confirmation of award case it lacked authority, i.e. competency to proceed, to decide whether a party was entitled to fees and costs of the confirmation proceeding under the terms of the arbitration agreement.

[14] Relying on Kimberly Area School District v. Zdanovec, 222 Wis. 2d 27, 39, 586 N.W.2d 41 (Ct. App. 1998), the circuit court stated that "[i]t is a general rule that arbitrability is to be determined by the courts."

12

while the circuit court did deny the petition to compel arbitration, the basis for the denial was that the court deemed the arbitration request to be untimely, not because the costs and reasonable attorney's fees issue was an improper subject for arbitration.

¶19  On March 20, 2014, the court of appeals affirmed the circuit court's order denying First Weber's petition to compel arbitration.  First Weber Grp., Inc., 353 Wis. 2d 492, ¶2.  The court of appeals likewise held that Graham was bound by an arbitration agreement and assumed, without deciding, that the dispute over costs and reasonable attorney's fees was within the scope of that agreement.  Id., ¶¶4-7, 29, 31, 33.  The court of appeals reasoned that the 180-day time limit for requesting arbitration "is an issue of substantive arbitrability reserved for judicial determination."  Id., ¶43.  The court of appeals concluded that First Weber's arbitration request was untimely and affirmed the circuit court's order on that basis.  Id., ¶¶49-55.

### III. STANDARD OF REVIEW

¶20  First Weber's petition to compel arbitration involves contract interpretation, which is a question of law that we review de novo.  Cirilli v. Country Ins. & Fin. Servs., 2009 WI App 167, ¶10, 322 Wis. 2d 238, 776 N.W.2d 272 (citations omitted).

### IV.  ANALYSIS

¶21  The parties seem to agree that Graham is bound by an agreement to arbitrate contractual disputes with other Realtors

13

arising from their relationship as Realtors.[15] The parties also seem to agree that the arbitration agreement covers the subject matter of the dispute at issue. Thus, the crux of the issue before us is whether the timeliness of the arbitration request should be decided by a court or in arbitration.

¶22 Graham argues that First Weber's claim for costs and reasonable attorney's fees is not arbitrable because First Weber's arbitration request was untimely.[16] Graham also argues that this timeliness issue is for a court, rather than an arbitrator, to decide. First Weber argues that the issue of timeliness is procedural and for an arbitrator, rather than a court, to decide.

¶23 We hold that Graham's timeliness and estoppel defenses against arbitration are to be determined in the arbitration proceedings, not by a court in a proceeding under Wis. Stat. § 788.03 to compel arbitration. We base our decision on Wisconsin's public policy favoring arbitration, the arbitration agreement, the Realtors Association's arbitration procedures,

---

[15] Courts routinely hold that Realtors are parties to an arbitration agreement by virtue of their membership in a local Realtors association that requires them to arbitrate certain disputes. See Lane v. Urgitus, 145 P.3d 672, 681 (Colo. 2006) (collecting cases).

[16] Graham argues in his brief to this court that, although the present dispute "was 'arbitrable' in the sense that it was the type of claim that could have been arbitrated if pursued in a timely manner in the proper venue, the claim was not 'arbitrable' when pursued more than a year after first pursuing the claim in litigation."

the limited role of courts in actions to compel arbitration under § 788.03, and relevant case law.

### A. Public Policy Favoring Arbitration

¶24 Wisconsin has a "policy of encouraging arbitration as an alternative to litigation . . . ." Kemp v. Fisher, 89 Wis. 2d 94, 100, 277 N.W.2d 859 (1979). "The Wisconsin Arbitration Act embodies this state's clearly established public policy to enforce agreements to arbitrate." Cirilli, 322 Wis. 2d 238, ¶11 (citation omitted). "[A]rbitration is meant to be a swift and inexpensive process that is guided by a contractual agreement." Employers Ins. of Wausau v. Jackson, 190 Wis. 2d 597, 611, 527 N.W.2d 681 (1995). Indeed, "the goal of arbitration is 'to resolve the entire controversy out of court without the formality and expense that normally attaches to the judicial process.'" Borst v. Allstate Ins. Co., 2006 WI 70, ¶61, 291 Wis. 2d 361, 717 N.W.2d 42 (quoted source omitted).

¶25 In an action to compel arbitration, a court presumes that its role is limited to determining whether the parties agreed to arbitrate the subject matter of the dispute at issue. See Kimberly Area Sch. Dist. v. Zdanovec, 222 Wis. 2d 27, 37-39, 586 N.W.2d 41 (Ct. App. 1998). When exercising that role, a court employs a "strong presumption" that the parties agreed to arbitrate the subject matter of the dispute at issue when "the contract in question contains an arbitration clause." Cirilli, 322 Wis. 2d 238, ¶14 (citing Kimberly Area Sch. Dist., 222 Wis. 2d at 39).

### B. The Arbitration Agreement and Procedure

15

¶26 First Weber and Graham are parties to an arbitration agreement. When they became members of the Realtors Association, they agreed to comply with the National Association of Realtors' Code of Ethics. Article 17 of the Code of Ethics provides that, in the event of a contractual dispute "between REALTORS® (principals) associated with different firms, arising out of their relationship as REALTORS®, the REALTORS® shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter." Under section 44(a) of the Code of Ethics and Arbitration Manual, "[t]he duty to submit to arbitration continues in effect even after membership lapses or is terminated, provided that the dispute arose while the respondent was a REALTOR® . . . ." The Realtors Association's rules expressly require its members to obey this agreement to arbitrate. For example, Article V, section 7 of the Realtors Association's Constitution requires its members to obey "the duty to arbitrate controversies arising out of real estate transactions as specified by Article 17 of the Code of Ethics . . . ." The Realtors Association provides penalties for failure to comply with the duty to arbitrate. Specifically, Article V, section 2 of the Realtors Association's Constitution provides that "[a]ny member of the [Realtors Association] may be reprimanded, fined, placed on probation, suspended, or expelled by the Board of Directors for a violation of this Constitution . . . ."

16

¶27 The arbitration agreement at issue requires an arbitration request to be timely filed. Section 47(a) of the Code of Ethics and Arbitration Manual, which is binding on Realtors Association members, provides: "Requests for arbitration must be filed within one hundred eighty (180) days after the closing of the transaction, if any, or within one hundred eighty (180) days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later." This provision is not statutory. It is not agreed upon outside of the arbitration process. It is not a statute of limitations or a statute of repose. The 180-day time limit is required only because it is contained in the Realtors' agreement to arbitrate by reference to the Realtors Association's rules and the National Association of Realtors' Code of Ethics. In addition, this time limit comprises an element of reasonableness and can be suspended under certain circumstances. The Realtors Association arbiters are "comparatively more expert [than a court] about the meaning of their own rule" and "comparatively better able to interpret and to apply it." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002). Thus, "it is reasonable to infer that the parties intended the [arbitration] agreement to reflect that understanding." Id. (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995)). "[P]arties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters." Id. at 86.

17

¶28 Likewise, the Realtors Association's arbitration procedures are designed to allow disputes to be resolved through the arbitration process.[17] The arbitration procedures provide a process by which a controversy will be determined to be arbitrable or be dismissed. Nowhere is it contemplated that courts may make this determination. In particular, after receiving an arbitration request, the Realtors Association forwards the request to a Grievance Panel, which determines, inter alia, "whether the controversy described is an arbitrable matter." The Grievance Panel either dismisses the arbitration request or refers the matter for arbitration before a Hearing Panel. Either decision by the Grievance Panel may be appealed to the Realtors Association's Board of Directors, which determines whether to dismiss the matter or refer it for arbitration.[18] If arbitrable, the matter is arbitrated before a Hearing Panel, which renders a binding decision. The fact that the Realtors Association's arbitration process is to determine "whether the controversy described is an arbitrable matter" supports a conclusion that the timeliness issue is for the

---

[17] This procedure is described in various documents in the record, including a document titled "REALTORS® Association of South Central Wisconsin, Inc. Filing Ethics Complaints and Arbitration Requests" and the Realtors Association's standardized forms for requesting and agreeing to arbitration.

[18] In the present case, the Grievance Panel referred the matter for arbitration and notified Graham to that effect. Graham did not appeal that decision or argue to the Realtors Association that First Weber's arbitration request was untimely.

Realtors Association's arbitration process, not a court, to decide. See Howsam, 537 U.S. at 86.

¶29 In sum, the Realtors Association's rules and grievance process intend that disputes between its members be resolved out of court and demonstrate that its arbitration process may determine whether an arbitration request was timely.

## C. Courts Have a Limited Role in Arbitration

¶30 We now turn to the limited role that Wisconsin courts have in arbitration. We first discuss a court's role under Wis. Stat. § 788.03, which authorizes courts to compel arbitration according to the terms of an arbitration agreement. We will next discuss case law that explains that a court's role in an action to compel arbitration is generally limited to determining whether the parties agreed to arbitrate the subject matter of the dispute at issue.

## 1. Legislative Guidance

¶31 The legislature has determined that the courts have a limited role in the context of arbitration. "Judicial review of arbitration awards is very limited." Milwaukee Prof'l Firefighters, Local 215, IAFF, AFL-CIO v. City of Milwaukee, 78 Wis. 2d 1, 21, 253 N.W.2d 481 (1977). The legislature has recognized, however, that not all disputes can be resolved without court intervention. For example, if a party refuses to pay an arbitration award, that award can be enforced through a petition to confirm under Wis. Stat. § 788.09. Similarly, Wis. Stat. § 788.03 authorizes a circuit court to compel parties to arbitrate a dispute according to the terms of their arbitration

agreement.  Employers Ins. of Wausau, 190 Wis. 2d at 613-14. The case at issue is an action under § 788.03 seeking to compel Graham to arbitrate.

¶32  In an action to compel arbitration under Wis. Stat. § 788.03, "the issues are limited to 'the making of the arbitration agreement or the failure, neglect or refusal to perform' under the agreement."[19]  Pilgrim Inv. Corp. v. Reed, 156 Wis. 2d 677, 684, 457 N.W.2d 544 (Ct. App. 1990) (quoting Wis. Stat. § 788.03).  When determining whether a dispute is arbitrable, a "court's function is limited to a determination whether there is a construction of the arbitration clause that would cover the grievance on its face and whether any other provision of the contract specifically excludes it."  Joint Sch. Dist. No. 10, City of Jefferson v. Jefferson Ed. Ass'n, 78 Wis. 2d 94, 111, 253 N.W.2d 536 (1977); see also Cirilli, 322 Wis. 2d 238, ¶14.  "When the court determines arbitrability it must exercise great caution. The court has no business weighing

---

[19] In an action to compel arbitration, a court also may consider whether a party failed to appoint an arbitrator as required by the terms of an arbitration agreement. Employers Ins. of Wausau v. Jackson, 190 Wis. 2d 597, 613-16, 527 N.W.2d 681 (1995).

Graham argues that the petition to compel arbitration must be denied because his failure to arbitrate is not a failure "to perform under a written arbitration agreement," see id. at 613, because the arbitration agreement does not require him to arbitrate untimely claims. This argument hinges on whether the arbitration request was untimely. As we conclude in this opinion, Graham's timeliness argument is to be decided in the arbitration process, not by a court.

the merits of the grievance. It is the arbitrators' decision for which the parties bargained." Joint Sch. Dist. No. 10, 78 Wis. 2d at 111.

¶33 First Weber and Graham seem to agree that a controversy over costs and reasonable attorney's fees is arbitrable under their arbitration agreement. The disagreement between First Weber and Graham rests on whether arbitration of First Weber's claim is precluded on the basis of timeliness or estoppel and whether a court or arbitration should decide these issues.[20]

2. Substantive Arbitrability and Procedural Arbitrability

¶34 "Arbitrability questions generally fall into one of two categories." 1 Larry Edmonson, Domke on Commercial Arbitration § 15:4 (3d ed. 2014). "Substantive arbitrability refers to whether the dispute involves a subject matter which the parties have contracted to submit to arbitration." Id. "Procedural arbitrability concerns issues such as whether certain procedures apply to a particular dispute, whether such procedures were followed or excused, and whether unexcused failure to follow procedure avoids the duty to arbitrate." Id. "The threshold question of whether a matter is subject to

---

[20] As we explained earlier, we do not separately address estoppel. Our discussion of why the timeliness issue is to be decided in the arbitration process explains why the estoppel issue is to be decided in the arbitration process. See supra note 5.

21

arbitration must be determined from the terms of the parties' agreement." Id.

¶35 Graham and First Weber dispute whether the time limit at issue is a matter of procedural arbitrability. Although Graham concedes that timeliness "may be" a procedural issue, he contends that it "is also a substantive issue." The distinction between substantive arbitrability and procedural arbitrability issues is important because issues of substantive arbitrability generally are decided by courts, whereas issues of procedural arbitrability generally are determined during the arbitration process. Graham also argues that we should not follow Howsam because it is distinguishable. First Weber argues that an arbitrator, rather than a court, may decide the time limit issue because it is a matter of procedural arbitrability. First Weber urges us to rely on Howsam and BG Group, PLC v. Republic of Argentina, 572 U.S. ___, 134 S. Ct. 1198 (2014), in which the United States Supreme Court held that a time limit for seeking arbitration is an issue of procedural arbitrability. We determine that issues such as timeliness and estoppel are matters of procedural arbitrability and are to be decided during the arbitration process, not by a court, unless the parties agreed otherwise.

¶36 In an action to compel arbitration, a court's role generally is limited to determining the question of substantive arbitrability, unless the parties specifically agreed otherwise. See Kimberly Area Sch. Dist., 222 Wis. 2d at 37-39. Specifically, the court decides "whether the [arbitration]

22

agreement <u>could</u> cover the controversy," not whether the agreement "expressly covers the dispute." <u>Racine Educ. Ass'n v. Racine Unified Sch. Dist.</u>, 176 Wis. 2d 273, 284, 500 N.W.2d 379 (Ct. App. 1993) (citing <u>Joint Sch. Dist. No. 10</u>, 78 Wis. 2d at 111). Given the limited role of a court, the court must order arbitration if the arbitration agreement could cover the subject matter of the dispute. <u>Id.</u> at 284-85. Any doubt concerning the scope of the agreement must be resolved in favor of compelling arbitration. <u>Cirilli</u>, 322 Wis. 2d 238, ¶14 (citing <u>AT & T Techs. v. Commc'ns Workers</u>, 475 U.S. 643, 650 (1986)).

¶37 Issues of procedural arbitrability are to be resolved during arbitration, rather than by a court, unless the parties agreed otherwise. <u>BG Grp.</u>, 134 S. Ct. at 1207-08; <u>Howsam</u>, 537 U.S. at 83-84. Issues of procedural arbitrability "include claims of 'waiver, delay, or a like defense to arbitrability.'" <u>BG Grp.</u>, 134 S. Ct. at 1207 (quoting <u>Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25 (1983)). They also include "the satisfaction of 'prerequisites such as <u>time limits</u>, notice, laches, <u>estoppel</u>, and other conditions precedent to an obligation to arbitrate.'" <u>Id.</u> (quoting <u>Howsam</u>, 537 U.S. at 85) (emphasis added) (quotation marks omitted). "Questions of mere delay, laches, statute of limitations, and untimeliness raised to defeat compelled arbitration are issues of procedural arbitrability exclusively reserved for resolution by the arbitrator." Edmonson, <u>supra</u>, § 15:4. The vast majority of state courts hold that these procedural issues are presumptively for an arbitrator to decide. <u>BG Grp.</u>, 134 S. Ct. at 1207

(citing Revised Uniform Arbitration Act of 2000 § 6, Comment 2, 7 U.L.A. 13 (Supp. 2002)). "The timeliness of a demand for arbitration is an issue for arbitrators, rather than the courts." Edmonson, supra, § 19:2 (3d ed. Supp. 2014).

¶38 In the present case, the circuit court determined that the subject matter of costs and reasonable attorney's fees was within the scope of the arbitration agreement. The court of appeals assumed, without deciding, that this determination was correct. Graham does not dispute that the subject matter of costs and reasonable attorney's fees is within the scope of the arbitration agreement. Instead, the circuit court, court of appeals, and Graham all reason that the timeliness of the request to arbitrate is an issue for the court to decide. In light of the distinction between a substantive arbitrability issue and a procedural arbitrability issue, we conclude that timeliness and estoppel clearly fall within the latter category.[21] By way of further example, we now discuss Howsam, BG Group, and Kimberly Area School District.

¶39 In Howsam, Karen Howsam relied on investment advice from Dean Witter Reynolds, Inc. Howsam, 537 U.S. at 81. Their client service agreement contained a clause requiring arbitration of any dispute between them that concerned or arose

---

[21] We reject Graham's argument that the timeliness issue is a matter of both substantive and procedural arbitrability. He cites no authority for that proposition. The overwhelming weight of authority, which we find highly persuasive, holds that timeliness is a matter of procedural arbitrability.

24

from their client relationship. Id. The agreement also provided that Howsam could select the arbitration forum. Id. at 82. Howsam requested the National Association of Securities Dealers ("NASD") to arbitrate her dispute with Dean Witter. Id. Under the NASD's rules, an arbitration request must be filed within six years of the event giving rise to the dispute. Id. Dean Witter filed suit, asking a U.S. district court to declare the dispute ineligible for arbitration because the arbitration request was filed beyond the NASD's six-year time limit. Id. The district court dismissed the action, holding that an NASD arbitrator, not the court, should decide whether the request was timely. Id. The United States Court of Appeals for the Tenth Circuit reversed, concluding that the time limit concerned the dispute's "arbitrability" and thus was an issue for a court to decide. Id.

¶40 The Supreme Court reversed the court of appeals, holding that the time limit was an issue for an arbitrator to decide. Id. at 82-83. The Court held that the timeliness issue was a matter of procedural arbitrability and hence was presumptively for an arbitrator to decide. Id. at 84-85. The Court also held that Howsam failed to overcome that presumption because she failed to demonstrate that the parties intended to have a court decide the timeliness issue. Id. at 85-86. The Court relied on the similarity between a time limit and other potential defenses against arbitration, such as waiver and delay, which the Court in previous decisions held were matters of procedural arbitrability. Id. at 84-85. The Court also

25

relied on the Revised Uniform Arbitration Act of 2000, which sought to incorporate the law of the vast majority of states and which explained that time limits are matters of procedural arbitrability. Id. (citing Revised Uniform Arbitration Act of 2000 § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002)).

¶41 Similarly, in BG Group, the United States Supreme Court reaffirmed that a time limit for seeking arbitration is a matter of procedural arbitrability. In that case, the United Kingdom and Argentina had a treaty for resolving disputes between one of those nations and an investor from the other nation. BG Grp., 134 S. Ct. at 1203. The treaty allowed for a dispute to be arbitrated if it had been submitted to a court and 18 months had elapsed without a final decision. Id. Argentina and a British investor, BG Group, agreed to arbitrate a dispute in Washington, D.C. Id. at 1204. The arbitrators determined that they had jurisdiction notwithstanding the fact that BG Group did not file suit and wait 18 months before seeking arbitration. Id. at 1205. The arbitrators awarded BG Group $185 million in damages. Id. Each side filed a petition for review in the District Court for the District of Columbia, with BG Group seeking to have the award confirmed and Argentina seeking to have the award vacated. Id. Argentina argued in part that the arbitrators lacked jurisdiction because BG Group did not file suit and wait 18 months before seeking arbitration. Id. The district court confirmed the award. Id. The Court of Appeals for the District of Columbia Circuit reversed the district court's decision. Id. Interpreting and applying the

treaty's litigation requirement de novo, the court of appeals held that the arbitrators lacked jurisdiction. Id.

¶42 The Supreme Court reversed the court of appeals, holding that a court must defer to the arbitrators' decision that they had jurisdiction, because the litigation requirement was a matter of procedural arbitrability. Id. at 1206-08, 1213. The Court reasoned that the litigation requirement "determines when the contractual duty to arbitrate arises, not whether there is a contractual duty to arbitrate at all." Id. at 1207 (citation omitted). Furthermore, that requirement's 18-month waiting period was "highly analogous" to the time limit at issue in Howsam, which was also a matter of procedural arbitrability. Id. at 1207-08. Argentina failed to overcome the presumption that the litigation requirement issue, as a matter of procedural arbitrability, was presumptively for an arbitrator to decide. Id. at 1210. Therefore, when reviewing the arbitration award, a court must show "considerable deference" to the arbitrators' decision that the litigation requirement was not applicable. Id.

¶43 In contrast to Howsam and BG Group, the court of appeals in Kimberly Area School District was presented with a dispute over substantive arbitrability. In that case, a federal lawsuit was filed against a teacher for her allegedly inappropriate discipline of students. Kimberly Area Sch. Dist., 222 Wis. 2d at 31-32. The parties to the federal lawsuit signed a settlement agreement providing that a three-person panel would decide whether the teacher should be fired, the panel's decision

27

would be final and binding, and the teacher would not contest the panel's decision. Id. at 32-33. The panel voted to fire the teacher. Id. at 34. The teacher then filed a grievance seeking to arbitrate the settlement agreement, because she had a right to arbitrate under the teachers union's collective bargaining agreement. Id. at 35.

¶44 The court of appeals held that the teacher had no right to arbitrate over the settlement agreement. Id. at 46. The court of appeals first determined that it had jurisdiction to decide the question because it was one of substantive arbitrability. Id. at 41-42. The court of appeals next determined that the dispute was not arbitrable. Id. at 45-46. The court of appeals stated that "a settlement agreement 'is an arbitrable subject when the underlying dispute is arbitrable, except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated.'" Id. at 46 (quoting Niro v. Fearn Int'l, Inc., 827 F.2d 173, 175 (7th Cir. 1987)). Because the settlement agreement expressly excluded the possibility of arbitrating the panel's decision, the parties had not agreed to arbitrate a dispute over the settlement agreement. Id. Thus, Kimberly Area School District does not stand for the proposition that an issue like timeliness or estoppel is a proper matter for a court to consider in an action to compel arbitration. Instead, that case is consistent with the proposition that the court generally may weigh in on a substantive arbitrability issue, such as whether the subject matter of the dispute is subject to arbitration.

28

¶45 We find <u>Howsam</u> and <u>BG Group</u> highly persuasive.[22] In those cases, the Supreme Court explained that courts presume that the question of substantive arbitrability is for a court to decide and that matters of procedural arbitrability are for an arbitrator to decide. <u>BG Grp.</u>, 134 S. Ct. at 1206-07. These presumptions are consistent with Wisconsin law.[23] The rationale behind the presumption associated with substantive arbitrability is to protect parties from being compelled to arbitrate a dispute that they did not agree to arbitrate. <u>Howsam</u>, 537 U.S. at 83-84; <u>First Options</u>, 514 U.S. at 945; <u>see also</u> <u>Kimberly Area Sch. Dist.</u>, 222 Wis. 2d at 39. The rationale behind the

_____

[22] Graham argues that <u>Howsam</u> is distinguishable because the time limit at issue in that case was not part of an arbitration agreement, but rather was imposed only by the forum in which arbitration was sought. However, the Supreme Court in <u>BG Group</u> relied on <u>Howsam</u>, although the time limit at issue in <u>BG Group</u> <u>was</u> part of an arbitration agreement. <u>BG Grp., PLC v. Republic of Argentina</u>, 572 U.S. ___, 134 S. Ct. 1198, 1203, 1206-08 (2014). Moreover, the time limit at issue in <u>Howsam</u> was "effectively incorporated . . . into the parties' agreement." <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 86 (2002). Graham further argues that <u>Howsam</u> is distinguishable because it involved federal law, not Wisconsin law. However, Wisconsin courts traditionally have followed the United States Supreme Court's principles regarding a court's limited function in actions to compel arbitration. <u>See</u> <u>Cirilli</u>, 322 Wis. 2d 238, ¶¶12-14. Thus, Graham's arguments for distinguishing <u>Howsam</u> are not persuasive. Graham's response brief does not address <u>BG Group</u>, although First Weber's brief-in-chief devotes an entire page to that case.

[23] Wisconsin courts have already adopted the presumption that the question of substantive arbitrability is generally for a court to decide. <u>See</u> <u>Kimberly Area Sch. Dist.</u>, 222 Wis. 2d at 39.

29

presumption associated with procedural arbitrability is that it advances the public policy of encouraging arbitration and enforcing arbitration agreements, see First Options, 514 U.S. at 945; promotes arbitration's goal of speedy dispute resolution, see John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 558-59 (1964); and prevents courts from ruling on the merits of an underlying claim when determining whether to compel arbitration, see Cirilli, 322 Wis. 2d 238, ¶¶13, 17-18. Accordingly, the presumption associated with procedural arbitrability is consistent with Wisconsin's public policy favoring arbitration, the arbitration agreement at issue, the Realtors Association's arbitration procedure, and the limited role of our state courts in actions under Wis. Stat. § 788.03 to compel arbitration. See supra ¶¶24-32.

¶46 In sum, Howsam, BG Group, and Kimberly Area School District demonstrate that a court's role in an action to compel arbitration is limited. If the arbitration agreement could cover the subject matter of the dispute, which is an issue of substantive arbitrability, the court must order arbitration and resolve all doubts as to the scope of the agreement in favor of compelling arbitration. Issues like timeliness or estoppel are matters of procedural arbitrability to be determined during the arbitration process, not by a court, unless the parties agreed otherwise.

## V. CONCLUSION

¶47 The purpose of the court's limited role in arbitration is to advance Wisconsin's public policy of encouraging

arbitration and enforcing agreements to arbitrate. Graham's argument, if accepted, would conceivably conflate the important distinction between issues of substantive arbitrability and issues of procedural arbitrability. Such a result would undermine the purpose of arbitration, wherein arbitrable disputes are "to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." See AT & T Techs., 475 U.S. at 650. Graham's argument that First Weber's arbitration request was untimely highlights why a court may not decide this timeliness issue. Graham argues that First Weber's "claim was no longer valid" after the 180-day time limit expired and that, "[a]fter 180 days, there is no longer a viable claim." If we were to determine whether First Weber's claim is "valid" or "viable," we would impermissibly rule on the merits of First Weber's claim. See Cirilli, 322 Wis. 2d 238, ¶¶13, 17.

¶48 In the case at issue, whether we are considering the public policy behind arbitration, the arbitration agreement and procedure, a court's limited role in an action to compel arbitration under Wis. Stat. § 788.03, and the relevant case law, each militates in favor of a determination that Graham's timeliness and estoppel arguments properly belong in the arbitration process, not before the court.

¶49 We conclude that under the arbitration agreement, Graham's timeliness and estoppel defenses against arbitration are to be determined in the arbitration proceedings, not by a court in a proceeding under Wis. Stat. § 788.03 to compel

arbitration.   Graham's timeliness and estoppel defenses against arbitration are procedural arbitrability issues to be determined during the arbitration process, rather than by a court.   Graham has not overcome the presumption in favor of arbitration. Accordingly, we reverse the court of appeals' decision and remand the cause to the circuit court with the instruction that First Weber's petition to compel arbitration be granted.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.