COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1186**

STATE OF WISCONSIN

Cir. Ct. No. 2021SC153

IN COURT OF APPEALS
DISTRICT III

---

HARRY M. WIRTH,

PLAINTIFF-APPELLANT,

V.

MART W. SWENSON,

DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Bayfield County: JOHN P. ANDERSON, Judge. *Affirmed*.

¶1    HRUZ, J.[1]    Harry M. Wirth, pro se, appeals a judgment dismissing his claim against Mart W. Swenson, also pro se,[2] and granting Swenson's

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Swenson is an attorney licensed to practice law in Wisconsin.

counterclaim against Wirth for $4,560. Wirth argues that the circuit court erred because "all [it] had to go by was total ill-founded and self-created misinformation from" Swenson. We construe his challenge as being that the court misinterpreted the written agreement between the parties and that the court erred by crediting Swenson's testimony. We affirm.

## BACKGROUND

¶2    Wirth owns multiple parcels of land totaling approximately 800-900 acres of property in Bayfield County (the Property), including three parcels of lakeshore property around McCloud Lake (the McCloud Lake parcels).[3]    On January 24, 2000, Wirth and Swenson signed a jointly drafted contract generally granting, as relevant to this appeal, Swenson the right to hunt, fish and recreate on the Property, in exchange for Swenson paying the property tax on the Property. The parties dispute whether Swenson was obligated under the contract to pay property taxes for the McCloud Lake parcels.

¶3    As relevant to this appeal, the contract provides,

> 11.    Swenson/Bischel,[4] along with Wirth, have exclusive right to fish, hunt and recreate on approximately 651 acres, … and in addition have right to use the roads and established trails on the 143 acre[s] surrounding Hilltop Home property, as long as Swenson/Bischel pay taxes by year end, each year…. These rights do not exclude Harry Wirth.
>
> ….

---

[3] The record is unclear as to exactly how many acres of property in Bayfield County Wirth owns. We need not resolve that number for purposes of this appeal.

[4] Bischel is not a party in this appeal. Aside from quoting the contract, we do not discuss Bischel.

13.  No use of McCloud cabin or access to or hunting on lands abutting the single lane road behind Wirth's gate— see Swenson/Wirth Boundary Map which both Swenson/Bischel and Wirth agree to adhere to.  Absolutely no roads, trails or entrance by Swenson/Bischel in the yellow area designated in Swenson/Wirth Boundary Map.

….

29.  Swenson/Bischel shall pay property taxes, in a timely manner, on all Wirth properties, *so specified as* Swenson/Bischel *exclusive* hunting, fishing, and recreation properties.  Wirth shall take necessary steps to keep all above properties in the Forest Crop Management Plan to reduce taxes.  If properties are not in the Forest Crop Program, Wirth shall be responsible for tax difference.[5]

….

33.  McCloud Landing: leave "no trace" after each time of use, including boats, motors, furniture, or other gear or personal belongings.

(Emphasis added.)  The area described in paragraph 13 of the contract is that of the McCloud Lake parcels.

¶4      On September 13, 2021, Wirth filed a small claims complaint, alleging that Swenson failed to pay the property taxes for the Property and seeking

---

[5] The parties discuss the federal Forest Crop Program and the Managed Forest Land (MFL) program at length in their briefs.  Swenson states that Wirth removed the McCloud Lake parcels from the MFL program in 2013, which caused the property taxes on these parcels to increase and ultimately led to Wirth filing his small claims complaint.  Swenson further states that removing the parcels from the MFL program caused him to overpay the property taxes for the McCloud Lake parcels for six years.  The parties dispute who wanted the McCloud Lake parcels to be removed from the MFL program and who is responsible for the increased property taxes on these parcels.

We note that the circuit court did not base its judgment on who wanted the McCloud Lake parcels removed from the MFL program or who was responsible for the increase in taxes.  Rather, the court based its judgment on whether the contract excluded Swenson from the McCloud Lake parcels.  We do the same.  Accordingly, we do not discuss the MFL program further.

$4,619.11 in damages. Swenson filed an answer and counterclaim, alleging that the McCloud Lake parcels were excluded from his obligation to pay property taxes under the contract and that, because he had paid the property taxes for those parcels for several years, he had paid more than what was due from him.[6] At a bench trial, Wirth testified that Swenson made full payments for 18 years on the Property, that Swenson did not pay any property taxes in 2019 or 2020, and that Swenson still used all of the Property.

¶5      Swenson testified that he believed the contract excluded him from using the McCloud Lake parcels and, therefore, he was not required to pay the property taxes on those parcels. In support of this belief, Swenson referenced paragraph 13 of the contract, which stated that he was to have "[n]o use of McCloud cabin or access to or hunting on lands abutting the single lane road behind Wirth's gate."[7] Swenson stated that he never had any right to use the three parcels, aside from the landing on McCloud Lake, which use was separately permitted under paragraph 33 of the contract.

¶6      Swenson testified that he paid the property taxes on the McCloud Lake parcels for the six years he now contests because he did not realize those

_____

[6] In his answer and counterclaim, Swenson raised an additional claim regarding approximately $5,000 in insurance money to be used for a patio repair on the Property. Swenson paid the insurance premium for the property, and the insurable interest was in Wirth's name. After flooding damage occurred on some of the Property, insurance funds were used to repair that portion of the Property. There were $5,000 left over from the insurance funds, and Swenson and Wirth orally agreed that these funds would be used for concrete work on the property, which apparently never occurred. The circuit court did not award Swenson any money on this claim, and Swenson does not cross-appeal the court's ruling on this claim or otherwise raise it on appeal. Thus, we do not address it further.

[7] Swenson explained that "McCloud cabin" is Wirth's private cabin on the lake. Wirth owns another cabin on the Property, Hilltop Cabin, that is open to Swenson.

4

parcels were being included in the taxes that he was paying to use the rest of the Property.[8]  Swenson explained that in 2020, Wirth accused him of not paying the property taxes in 2017 and 2018, which led to Swenson discovering that the McCloud Lake parcels were included in the property tax payments he made.[9]  Thus, Swenson argued that he had paid for six years of taxes for the McCloud Lake parcels that he did not need to pay.  Swenson contended that he should be credited for his property tax payments made for the McCloud Lake parcels at approximately $1,140 per year for six years against the two years of taxes that he did not pay Wirth and still owed.[10]

¶7  The circuit court stated that the crux of the dispute was Wirth's understanding that the contract gave Swenson unfettered access to the McCloud Lake parcels versus Swenson's understanding that the contract prohibited him from accessing the McCloud Lake parcels, aside from using the lake landing.  The

---

[8] Wirth would receive and pay the tax statements for the Property each year, after which he advised Swenson of the amount that he needed to pay Wirth in order to use the Property.

[9] It was later discovered that Swenson did, in fact, pay the property taxes in 2017 and 2018, but he did not pay them in 2019 or 2020 while still continuing to use the Property.

[10] It is unclear why Swenson is claiming that he overpaid the property taxes for only 6 years, as opposed to the 18 years that he and Wirth had this contract.  It is possible that Swenson chose six years because there is a six-year statute of limitations for contract claims in Wisconsin.  *See* WIS. STAT. § 893.43(1).  However, in his brief, Swenson indicates that he arrived at six years based on the fact that Wirth removed the McCloud Lake parcels from the MFL program in 2013 and that he paid the resulting increased property taxes from 2013 through 2018.

It is also unclear from the record how the exact offset value was determined.  However, on appeal, Wirth does not contest the amount awarded in the judgment other than saying that Swenson should not recover anything and still owes him the entire $4,619.11.  Because Wirth does not develop any argument in the alternative that, if he is incorrect on the merits regarding the interpretation of the contract, he still should not pay the total amount of the judgment ordered by the circuit court, we do not address this issue further.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop" a party's arguments).

court found that, even though the contract was "horribly drafted," "the closest fair reading of this would be that Swenson … ha[s] got some type of weird little access use to get to the lake, but there's no other use of the cabin style property." The court explained that paragraph 33 of the contract gave Swenson "some type of … keyhold interest getting him to the lake on some type of access point," but that Swenson did not otherwise have any access or right to use the McCloud Lake parcels. The court then found that Swenson had overpaid Wirth by $1,140 for four years, totaling $4,560, and awarded Swenson that sum.

¶8      Wirth now appeals the circuit court's judgment.

## DISCUSSION

¶9      Wirth argues that the circuit court's judgment of $4,560 against him "should be canceled" because "[t]here is no document" that provides Swenson with "a right of … credit" and "[t]here is no rebate" to Swenson. Wirth also contends that the court "overlooked and disregarded" his claim for $4,619.11 against Swenson.

¶10     We interpret Wirth's arguments as raising an issue of contract interpretation.[11] Specifically, Wirth appears to contend that nothing in the contract

---

[11] While Wirth argues that Swenson is not entitled to a "rebate" and to still "use" the Property, he does not develop any argument that, if Swenson in fact overpaid on the property taxes, those payments were voluntarily made and thus Swenson does not have a legal right to recover the overpayment. *See, e.g.*, ***Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship***, 2002 WI 108, ¶13, 255 Wis. 2d 447, 649 N.W.2d 626 (explaining that, under the "voluntary payment doctrine," "a person cannot recover money that he or she has voluntarily paid with full knowledge of all of the facts and without fraud, duress, or extortion in some form, and that no action will lie to recover the voluntary payment" (citation omitted)). Wirth also does not offer any other legal basis upon which Swenson should not be awarded the sums he overpaid under the parties' contract.

6

establishes that Swenson overpaid Wirth $4,560 in property taxes and that, pursuant to the contract, he is instead entitled to $4,619.11 from Swenson. Contract interpretation raises a question of law that we review de novo. *First Weber Grp., Inc. v. Synergy Real Est. Grp., LLC*, 2015 WI 34, ¶20, 361 Wis. 2d 496, 860 N.W.2d 498.

¶11    "Contract interpretation generally seeks to give effect to the parties' intentions. However, 'subjective intent is not the be-all and end-all.' Rather, 'unambiguous contract language controls contract interpretation.'" *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586 (citations omitted). "Contract language is construed according to its plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Id.*, ¶28 (citations omitted). "When possible, our interpretation should 'give meaning to every word' in the contract. We avoid interpretations that would 'render portions of a contract meaningless, inexplicable[,] or mere surplusage[,]' or that would 'read words into the contract [that] the parties opted not to include.'" *Ripp Distrib. Co. v. Ruby Distrib. LLC*, 2024 WI App 24, ¶28, 411 Wis. 2d 630, 5 N.W.3d 930 (alterations in original; citations omitted).

¶12    We agree with the circuit court that under the plain language of the parties' contract, Swenson was not obligated to pay any property taxes for the McCloud Lake parcels. Therefore, the court did not err by ordering Wirth to pay Swenson reimbursement for prior property tax payments Swenson made on the McCloud Lake parcels.

¶13    Paragraph 29 of the contract states that Swenson shall "pay property taxes … on all Wirth properties, so specified as Swenson/Bischel exclusive

hunting, fishing, and recreation properties." Paragraph 13 of the contract, however, provides:

> No use of McCloud cabin or access to or hunting on lands abutting the single lane road behind Wirth's gate—see Swenson/Wirth Boundary Map which both Swenson/Bischel and Wirth agree to adhere to. Absolutely no roads, trails or entrance by Swenson/Bischel in the yellow area designated in Swenson/Wirth Boundary Map.

Thus, the contract expressly excludes Swenson from using McCloud cabin and the lands abutting the road behind Wirth's gate as hunting lands. These lands are the McCloud Lake parcels. Because Swenson is limited from using those parcels, they are not part of the "Wirth properties, *so specified as* Swenson/Bischel *exclusive* hunting, fishing, and recreation properties." (Formatting altered.) Accordingly, the contract does not require Swenson to pay the property taxes on the McCloud Lake parcels.

¶14 Because Swenson paid the property taxes on the McCloud Lake parcels for years despite him not being obligated to do so or intending to do so, the circuit court did not err by ordering those payments reimbursed. Swenson stated that he paid $1,140 per year on the McCloud Lake parcels for six years. However, he also acknowledged that he did not pay the property taxes for two years that he continued to use the rest of the Property—2019 and 2020—and, therefore, that two years of those payments should be subtracted from the amount he is reimbursed. Wirth does not contest that Swenson paid the stated amounts.

¶15 Besides disagreeing with the circuit court's and our interpretation of the contract, Wirth appears to contest the circuit court's apparent determination that Swenson unknowingly made the unrequired property tax payments to him. Wirth argues that "[i]t is hard to believe that a seasoned, sophisticated

70[-]year[-]old attorney has been paying these very same taxes for over 6 years and does not know they exist and now wants to be reimbursed for the past." However, in so arguing, Wirth simply disagrees with Swenson's statement that he did not realize the McCloud Lake parcels were being included in the taxes that he was paying, which included the rest of the Property.

¶16    To the extent that Wirth intends to argue that this statement is incredible, we note that the circuit court appears to have found Swenson more credible in this regard, as the court stated that Swenson did not "catch" that he was making property tax payments "that he didn't legally have to make." We defer to the circuit court's finding on the credibility of a witness, as it had "the opportunity to observe the witness' demeanor and gauge the testimony's persuasiveness." *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998).

        *By the Court.*—Judgment affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.