COURT OF APPEALS
DECISION
DATED AND FILED

November 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1475**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV68

IN COURT OF APPEALS
DISTRICT III

OPTUMRX, INC.,

PLAINTIFF-APPELLANT,

V.

MARINETTE - MENOMINEE PRESCRIPTION CENTER LTD., STRB, INC., FRITSCH'S CORNER DRUG STORE, INC., NICHOLAS L. SMITH PHARMACY, LLC, PHARMACARE, LTD., ALGOMA HOMETOWN PHARMACY LLC, BAY HOMETOWN PHARMACY, LLC, BEAVER DAM HOMETOWN PHARMACY, LLC, BELLEVILLE HOMETOWN PHARMACY LLC, BRILLION HOMETOWN PHARMACY LLC, CORNER DRUG STORE, INC., CUBA CITY HOMETOWN PHARMACY LLC, DEPERE HOMETOWN PHARMACY LLC, FOX VALLEY PRESCRIPTION CENTER LTD., HARTLAND HOMETOWN PHARMACY LLC, HOMETOWN LONG TERM CARE PHARMACY, LLC, JANESVILLE HOMETOWN PHARMACY LLC, KEWAUNEE HOMETOWN PHARMACY LLC, KIMBERLY HOMETOWN PHARMACY LLC, LAKE MILLS HOMETOWN PHARMACY LLC, LANCASTER HOMETOWN PHARMACY LLC, LODI HOMETOWN PHARMACY LLC, MAYVILLE HOMETOWN PHARMACY LLC, MONROE HOMETOWN PHARMACY LLC, MONROE HOMETOWN PHARMACY WEST LLC, MURDOCK HOMETOWN PHARMACY LLC, NEENAH HOMETOWN PHARMACY LLC, NORTHLAND HOMETOWN PHARMACY LLC, OREGON HOMETOWN PHARMACY LLC, PESHTIGO HOMETOWN PHARMACY, LLC, PINNOW PHARMACY, INC., PLOVER HOMETOWN PHARMACY LLC, RACINE HOMETOWN PHARMACY LLC, RHINELANDER HOMETOWN PHARMACY LLC, SAWYER STREET HOMETOWN PHARMACY LLC, SISTER BAY HOMETOWN PHARMACY LLC, STEVENS POINT

**HOMETOWN PHARMACY LLC, SUN PRAIRIE HOMETOWN PHARMACY LLC, THE MD GROUP LLC, THE MD GROUP II LLC, TUTTLE'S PHARMACY, INC., WATERTOWN HOMETOWN PHARMACY LLC, WAUKESHA PRESCRIPTION CENTER LTD., WAUNAKEE HOMETOWN PHARMACY LLC, WAUPACA HOMETOWN PHARMACY LLC, WAUTOMA HOMETOWN PHARMACY LLC, WI RAPIDS HOMETOWN PHARMACY LLC, WILZ DRUGS, INC., WINNECONNE HOMETOWN PHARMACY LLC, HOMECARE PHARMACY LLC, HEALTH CARE PHARMACIES, INC., WATERLOO HOMETOWN PHARMACY LLC AND FHHP-KEWASKUM, LLC,**

    **DEFENDANTS-RESPONDENTS.**

---

APPEAL from a judgment of the circuit court for Marinette County: JAMES A. MORRISON, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 HRUZ, J. OptumRx, Inc., appeals a judgment dismissing its petition to compel arbitration against 71 pharmacies ("the Pharmacies"). OptumRx argues that the delegation provision in the parties' arbitration agreement, which was incorporated into a separate agreement between OptumRx and the Pharmacies, clearly and unmistakably shows that the parties agreed to arbitrate threshold questions of arbitrability, such as whether the parties agreed to arbitrate or whether the arbitration agreement covers particular claims.

¶2 We agree with OptumRx that the delegation provision in the parties' arbitration agreement clearly and unmistakably shows that the parties agreed an arbitrator would decide threshold questions of arbitrability. However, the Pharmacies' pleadings sufficiently challenged the enforceability of the delegation provision itself, and a court must consider that challenge before either enforcing the arbitration agreement and sending the case to arbitration or addressing the

challenge to the entire arbitration agreement. *See* ***Rent-A-Center, W., Inc. v. Jackson***, 561 U.S. 63, 71-72 (2010). The circuit court did not consider the Pharmacies' challenge to the enforceability of the delegation provision, but rather it considered their challenge to the entire arbitration agreement, which it may not do if the delegation provision itself is enforceable.

¶3 Accordingly, we reverse the circuit court's dismissal of OptumRx's petition and remand for the court to hold further proceedings, including an evidentiary hearing as necessary, on the Pharmacies' challenge to the enforceability of the delegation provision. If the Pharmacies' challenge is unsuccessful and the court determines that the provision is enforceable, the court must send the case to arbitration. If, however, the Pharmacies' challenge is successful and the court determines that the provision is unenforceable, only then can the court address the Pharmacies' challenge to the entire arbitration agreement.

## BACKGROUND

¶4 OptumRx is a pharmacy benefits manager ("PBM") that operates nationally and provides pharmacy-related administrative services to its clients in connection with various health and prescription drug plans and insurance programs. It contracts with pharmacies, on one end, and with health plans, on the other end, to reimburse pharmacies for prescription drugs. Participating pharmacies in OptumRx's network contract with OptumRx either directly or through pharmacy service administrative organizations, which the industry refers to as "PSAOs." The Pharmacies in this case have enrolled in OptumRx's network through various PSAOs, with which the Pharmacies have separate agreements called "participation agreements."

¶5 A PSAO can represent multiple pharmacies. Here, each PSAO, on behalf of the Pharmacies, entered into a "Provider Agreement" with OptumRx. In this case, there are eleven Provider Agreements at issue. The Pharmacies themselves did not sign the Provider Agreements, but each Provider Agreement stated that the PSAOs had authority to enter into the agreement for and on behalf of their affiliated Pharmacies as the Pharmacies' agents. By entering into a Provider Agreement, the Pharmacies acquired access to OptumRx's health plans and members.

¶6 The eleven Provider Agreements include a dispute resolution section. Within that section, all agreements, except one, contain arbitration provisions. The Provider Agreement that does not contain arbitration provisions is the agreement with the PSAO called Elevate ("the Elevate Agreement"). Only one of the Pharmacies, the Nicholas L. Smith Pharmacy, LLC ("the Smith Pharmacy"), was affiliated with Elevate between 2013 and 2018. That agreement's dispute resolution section contained mediation provisions rather than arbitration provisions. After 2018, the Smith Pharmacy contracted with a different PSAO, and that Provider Agreement included arbitration provisions.

¶7 Each Provider Agreement, including the Elevate Agreement, incorporated by reference a "Pharmacy Manual," which the agreement defined as "the rules, protocols, policies and administrative procedures adopted by [OptumRx] to be adhered to by [the Pharmacies] in providing Covered Prescription Services and doing business with [OptumRx] … under this Agreement." The majority of the Provider Agreements stated that the Pharmacy Manual "and all such addenda, exhibits and schedules, as the same may be amended from time to time, are incorporated herein by reference and made a part

hereof."[1]  Each Provider Agreement also required the Pharmacies and the PSAOs to comply with the Pharmacy Manual and provided the following:

> Any of the rules, policies, administrative procedures and guidelines adopted by [OptumRx] may be distributed in the form of a Pharmacy Manual or in other communications, including, but not limited to a website identified by [OptumRx].  The Pharmacy Manual may change from time to time.  Any such changes shall be binding on [the PSAOs] and [the Pharmacies].

Some of the Provider Agreements further stated that the PSAOs would be notified of changes to the Pharmacy Manual.[2]

¶8      The Pharmacy Manual is updated annually and is publicly available online.  Each version of the manual stated that it was incorporated and made part of a Pharmacy's Provider Agreement.  The manual also placed the responsibility of monitoring and complying with all the changes made to the Pharmacy Manual on the pharmacy.  It further stated that "[w]hile efforts are made to keep the

---

[1] There are several variations of this language in seven Provider Agreements that either allowed for amendments to the Pharmacy Manual as provided in the agreement or contained conflict-resolving provisions stating that either the Pharmacy Manual or the Provider Agreement controlled in the event of a conflict.  Five of these agreements were subsequently amended to state that the Pharmacy Manual controlled in the event of a conflict.  Two agreements contain no such amendment: (1) the agreement with the PSAO Health Mart Atlas, which appears to pertain only to one of the Pharmacies, the Marinette-Menominee Prescription Center, LTD ("the Marinette-Menominee Pharmacy"), and contains no amendment as of 2022; and (2) the Elevate Agreement.

We note these differences because there may have been a time when some of the Pharmacies were not subject to the Pharmacy Manual's language, despite its incorporation into the Provider Agreements.  Ultimately, however, the Pharmacies—with the potential exception of the Marinette-Menominee Pharmacy, *see infra* ¶43 n.8—are subject to the Pharmacy Manual, and there is no conflict with the Provider Agreements to resolve.  For this reason, we examine only the language of the arbitration agreement in the Pharmacy Manual.

[2] Two of the Provider Agreements also included a provision stating that "[f]rom time to time and upon [the PSAO's] request, [OptumRx] will provide a then-current copy of [OptumRx's] Pharmacy Manual."

information current, this [Pharmacy Manual] is subject to change without notice" and that the Pharmacy Manual supersedes the Provider Agreement in the event the manual and the agreement have conflicting language. The Pharmacies became bound by the Pharmacy Manual's terms upon joining OptumRx's network.

¶9 Between July 2015 and September 2020,[3] the Pharmacy Manual had a dispute resolution section that contained arbitration provisions and was similar to the dispute resolution section in the Provider Agreements. That section stated that

> the parties will work in good faith as set forth below to resolve any and all issues and/or disputes between them … including, but not limited to all questions of arbitration, the existence, validity, scope, interpretation or termination of the [Provider] Agreement, [Pharmacy Manual] or any term thereof prior to the inception of any litigation or arbitration.

The section then set forth the procedure the parties had to follow if a dispute arose. Specifically, it stated that either party could commence dispute resolution "in accordance with the rest of this section (or litigation if both parties waive arbitration) only if a representative of the party seeking to commence such litigation or arbitration certifies in writing" that the dispute was not resolved after following the procedures or that the other party to the dispute did not fully comply with those procedures.

¶10 If the party commencing a dispute satisfied the requirements in the dispute resolution section, the dispute had to be submitted to arbitration. The section then provided the requirements for arbitration, including the number of arbitrators, the required legal experience of the arbitrators, the location for

---

[3] In July 2015, OptumRx acquired Catamaran Corporation, which is also a PBM, and succeeded to its interests, which included the Provider Agreements with the Pharmacies' PSAOs.

arbitration proceedings, and discovery procedures. The section also included a severability provision, as well as a provision stating that if

> any court determines this arbitration proceeding is not binding or otherwise allows litigation involving a dispute to proceed, the parties hereby waive any and all right to trial by jury in or with respect to such litigation, such litigation would instead proceed with the judge as the finder off act [sic].

¶11 Following a decision of the California Court of Appeal concluding that the Pharmacy Manual's dispute resolution section was ambiguous as to whether the parties expressed an intent to delegate arbitrability questions to a panel of arbitrators, *see **Prescription Care Pharmacy, LLC v. OptumRx, Inc.**,* No. G057279, 2020 WL 4932554, at *5 (Cal. Ct. App. Aug. 24, 2020),[4] OptumRx amended the dispute resolution section in the Pharmacy Manual in September 2020 (hereinafter referred to as "the Amended Pharmacy Manual").

¶12 The Amended Pharmacy Manual changed the section title from "Alternative Dispute Resolution" to "Alternative Dispute Resolution and Arbitration." The changed language stated that

> the parties will work in good faith as set forth below to resolve any and all issues, disputes, or controversies between them … including, but not limited to all questions of arbitrability or the formation, validity, scope and interpretation of this arbitration agreement, all disputes relating in any way to the parties relationship, the [Provider] Agreement, or the [Pharmacy Manual] or the breach of either agreement, and all disputes relating in any way to [the Pharmacies'] status as a participating Network Pharmacy Provider in [OptumRx's] network, shall be resolved exclusively by binding arbitration administered by

---

[4] Although this case cannot be "cited or relied on by a court or a party in any other action," *see* Cal. App. R. 8.1115(a), we cite it to note it as the case that prompted OptumRx's changes to the Pharmacy Manual.

the American Arbitration Association in accordance with
its Commercial Arbitration Rules and Mediation
Procedures, as they may be amended from time-to-time.

After setting forth the procedures to follow if a dispute arose, the changed section stated that either party "may commence an arbitration in accordance with the rest of this section only if a representative of the party seeking to commence such arbitration certifies in writing that" the dispute was not resolved after following the procedures or that the other party did not fully comply with those procedures. This language removed references to litigation and to the waiver of arbitration by both parties that had been present in previous versions of the Pharmacy Manual. *See supra* ¶9.

¶13    As to arbitration procedures, the changed section required all arbitrations to be conducted by a panel of three arbitrators, each having at least ten years of healthcare law experience.  The section also included provisions regarding the selection of arbitrators by the parties and the timeframe for doing so, the location requirements for arbitration proceedings, and the timeframe for initiating an arbitration.  Another provision stated that the parties consented to a documentary hearing for all arbitrations but that "the arbitrators shall conduct an oral hearing, if requested in writing by a party, within forty (40) days after service of the initiating party's Demand."

¶14    As to discovery, the changed section allowed each party up to five written interrogatories, with each subdivision of separate questions counting as one interrogatory, and up to five document production requests, with each subdivision of separate requests counting as one request.  It also allowed a party to depose the opposing party's expert witness.  The changed section further included

a provision stating that each party would be responsible for its fees and expenses in connection with the arbitration, regardless of which party prevailed.

¶15    The changed dispute resolution section also included the following:

> Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. **The parties each waive such rights by agreeing that all disputes must be resolved exclusively in arbitration.**
>
> The parties expressly intend and agree that any Dispute be resolved exclusively on an individual basis and that no other dispute(s) with any third party(ies) may be consolidated or joined with the Dispute. The parties agree that the arbitrators lack any authority to resolve the Dispute as part of a class action, private attorney general, or other representative or consolidated action or proceeding, and that any ruling by the arbitrators to the contrary conflicts with their intent and would require immediate judicial review of such ruling. **The parties agree to arbitrate a Dispute solely on an individual basis and each waives the right to participate in a class action, private attorney general, or other representative or consolidated arbitration or proceeding in connection with any Dispute.**

Finally, the changed section included a severability provision, but that provision did not include the second sentence that was present in the previous versions of the Pharmacy Manual that referenced a court determining whether arbitration was binding. *See supra* ¶10.

¶16    OptumRx posted the Amended Pharmacy Manual on its website on September 17, 2020, but it did not notify the Pharmacies of the update to the dispute resolution section until December 11, 2020. When notifying pharmacies of updates to the Pharmacy Manual, OptumRx's notice included a statement that

the updated manual "replaces and supersedes the previous OptumRx Manual edition."

¶17    In December 2021, OptumRx received a "Notification of Dispute" from the Pharmacies alleging, among other things, that OptumRx reimbursed the Pharmacies for prescription drugs "below the contractual requirements" provided in the Pharmacy Manuals.  The parties attempted to resolve the dispute, but ultimately they failed, and the Pharmacies refused to arbitrate their claims.

¶18    On March 29, 2022, OptumRx filed a petition to compel arbitration against the Marinette-Menominee Pharmacy pursuant to WIS. STAT. § 788.03 (2023-24)[5] and 9 U.S.C. § 4.  In June 2022, that action was consolidated, pursuant to WIS. STAT. § 805.05, with actions in other counties where OptumRx had filed similar petitions to compel arbitration against other pharmacies.

¶19    OptumRx filed a motion to grant its petition to compel arbitration against the Pharmacies in August 2022, which it amended in November 2022, arguing that both the Amended Pharmacy Manual and the Provider Agreements required arbitration of the parties' dispute.  Specifically, OptumRx asserted that the arbitration provisions in the Pharmacy Manual's dispute resolution section, prior to and after it was amended, clearly and unmistakably delegated arbitrability questions to the arbitrator.  OptumRx thus contended that any challenge to the scope or enforceability of the arbitration agreement had to be resolved by the arbitrator.

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version.

¶20    In January 2023, the Pharmacies filed counterclaims against OptumRx and a response to OptumRx's amended motion. The Pharmacies' counterclaims alleged (1) breach of contract (of the Pharmacy Manuals), (2) breach of the duty of good faith and fair dealing, (3) conversion, and (4) statutory violations. In response to OptumRx's motion, the Pharmacies argued that the arbitration provisions in the dispute resolution section of both versions of the Pharmacy Manual did not clearly and unmistakably delegate arbitrability questions to the arbitrator. Even if they did, the Pharmacies argued that the delegation provision itself was unenforceable because it was unconscionable.

¶21    The circuit court held a nonevidentiary hearing and subsequently issued a written decision denying OptumRx's amended motion to grant its petition to compel arbitration. In its decision, the court made several findings of fact on which it relied to reach its conclusion. Relevant here, the court found that all the Pharmacies, except the Smith Pharmacy,[6] entered into Provider Agreements that included a dispute resolution section calling for binding arbitration. It further found that those Provider Agreements included "an appropriate delegation [provision] delegating to the arbitrators the power to decide all questions relating to arbitration including the availability and scope of arbitration."

¶22    Noting that agreements to arbitrate "clearly constitute substantial limitations upon [a party's] normal litigation rights," the circuit court stated that it needed "to look at issues of the formation of that agreement in the first place to see if there actually was such a meeting of the minds limiting the rights of the parties

---

[6] The circuit court mistakenly identified Elevate as one of the Pharmacies rather than one of the PSAOs.

in this fashion." The court proceeded to make observations regarding the parties' bargaining power and the significance of the Elevate Agreement and OptumRx's avoidance of that specific agreement not to arbitrate "by putting arbitration in the back door through the [Pharmacy] Manual." The court concluded that the arbitration agreement that OptumRx sought to enforce "was unconscionable in its inception and also in its unilateral modification; in the manner that it was imposed on a 'take it or leave it' basis and on the substance of how the arbitration scheme actually works."

¶23 Emphasizing the imposition of an arbitration scheme on the Smith Pharmacy through the Pharmacy Manual when Elevate had negotiated a Provider Agreement without arbitration provisions, the circuit court also concluded that OptumRx "was not dealing in good faith." The court explained that OptumRx was not dealing in good faith because it decided "the terms of an arbitration agreement even when they ha[d] agreed there will not be one"; it decided "when and if it will change those terms"; it "change[d] those terms without advance notice or negotiation"; and it implemented "those terms for several months before it affirmatively notifie[d] the [P]harmacies that substantial, unfavorable changes in the arbitration provisions [were] being implemented."

¶24 The circuit court further concluded "that in all but the most substantial disputes the cost of proceeding to arbitration will substantially outweigh any benefit that could be achieved in arbitration and that this will undoubtedly have a substantial chilling effect upon pharmacies presenting objectively meritorious positions." The court added that the arbitration scheme—which the court found required individualized arbitration and imposed substantial limitations on discovery, including on the use of interrogatories and depositions—was "the product of a one[-]sided agreement foisted upon pharmacies who need to

make a deal with Optum or have a substantial part of a market closed to them," which it opined was "fundamentally unfair." In sum, the court concluded that "the contract suffers from an unconscionable procedural defect in its formation[:] the take it or leave it nature of the contract and its subsequent amendments via the [Pharmacy] Manual."

¶25 The circuit court entered a judgment dismissing OptumRx's petition to compel arbitration and ordered the matter stayed with respect to the Pharmacies' counterclaims. OptumRx appeals. Additional facts will be provided below as necessary.

## DISCUSSION

¶26 This appeal addresses whether the delegation provision in the Amended Pharmacy Manual, which was incorporated into the Pharmacies' Provider Agreements, clearly and unmistakably shows that OptumRx and the Pharmacies agreed to arbitrate threshold questions of arbitrability, such that the circuit court should have granted OptumRx's petition to compel arbitration rather than address the enforceability of the parties' arbitration agreement more generally. Resolving this issue involves contract interpretation, which is a question of law that we review de novo. *First Weber Grp. v. Synergy Real Est. Grp.*, 2015 WI 34, ¶20, 361 Wis. 2d 496, 860 N.W.2d 498.

¶27 OptumRx argues that the circuit court should have compelled arbitration upon finding that the delegation provision in the Amended Pharmacy Manual was "appropriate." It is unclear, however, whether the court referred to the delegation provision in the Provider Agreements or the Amended Pharmacy Manual as "appropriate." Nevertheless, we conclude that the delegation provision in the Amended Pharmacy Manual clearly and unmistakably shows that OptumRx

13

and the Pharmacies agreed to delegate threshold questions of arbitrability to the arbitrator.

¶28    This conclusion, however, does not fully resolve the appeal because even if a delegation provision clearly and unmistakably shows that the parties agreed to delegate threshold questions of arbitrability to the arbitrator, when a party specifically challenges the delegation provision, the court must determine the validity or enforceability of that provision. *See Rent-A-Center*, 561 U.S. at 71-72. If the court concludes the delegation provision is valid or enforceable, it must send the matter to arbitration. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1304 (11th Cir. 2022); *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018). If the court concludes that the provision is invalid or unenforceable, it may resolve challenges to the entire arbitration agreement. *Attix*, 35 F.4th at 1303-04; *see also MacDonald*, 883 F.3d at 226.

¶29    Thus, we also address whether the Pharmacies specifically and sufficiently challenged the delegation provision in the Amended Pharmacy Manual. Following *Rent-A-Center* and subsequent federal cases, we conclude that the Pharmacies specifically and sufficiently challenged the delegation provision, given their argument that the particular provision itself was unenforceable. Because the circuit court failed to address the Pharmacies' challenge to the delegation provision specifically, we must remand the matter for the court to hold an evidentiary hearing, as necessary, on the Pharmacies' challenge to the enforceability of the delegation provision and to determine that provision's enforceability.

## I.  The Delegation Provision in the Amended Pharmacy Manual

¶30     Arbitration is a process by which parties agree to resolve their disputes "out of court without the formality and expense that normally attaches to the judicial process."  *First Weber Grp.*, 361 Wis. 2d 496, ¶24 (citation omitted). Given the parties' advance agreement to submit their disputes—including those of arbitrability—to arbitration, such agreements are a matter of contract from which arbitrators derive their authority.  *Midwest Neurosciences Assocs. v. Great Lakes Neurological Assocs.*, 2018 WI 112, ¶40, 384 Wis. 2d 669, 920 N.W.2d 767; *AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 648-49 (1986).

¶31     OptumRx petitioned the circuit court to compel arbitration pursuant to the Wisconsin Arbitration Act—WIS. STAT. ch. 788—and the Federal Arbitration Act ("FAA")—9 U.S.C. §§ 1-16.[7]  Both Acts embody the "policy of encouraging arbitration as an alternative to litigation."  *First Weber Grp.*, 361 Wis. 2d 496, ¶24 (citation omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (stating that the FAA reflects a "liberal federal policy favoring arbitration" (citation omitted)).  That policy, however, is not limitless.  *Midwest Neurosciences Assocs.*, 384 Wis. 2d 669, ¶42.  For instance, arbitrators "cannot determine whether they have the authority to decide arbitrability unless the parties give arbitrators such authority."  *Id.* (citation omitted).  "[P]arties cannot be 'required to submit any dispute to arbitration unless [they have] agreed to do so,'"

---

[7] The Wisconsin Arbitration Act and the FAA are substantively identical; thus, federal cases interpreting the FAA are persuasive authority for interpreting the Wisconsin Arbitration Act.  *See Employers Ins. of Wausau v. Jackson*, 190 Wis. 2d 597, 611 n.5, 527 N.W.2d 681 (1995).

and "only those disputes that the parties have agreed to so submit to arbitration are relegated to proceed in that forum." *Id.*, ¶¶40, 43 (second alteration in original; citation omitted). "Thus, the policy favoring arbitration applies only where the parties have indeed agreed to arbitration." *Pruett v. WESTconsin Credit Union*, 2023 WI App 57, ¶19, 409 Wis. 2d 607, 998 N.W.2d 529.

¶32     Parties can agree "that an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *see also Midwest Neurosciences Assocs.*, 384 Wis. 2d 669, ¶40 ("Parties may contract broadly and agree to arbitrate, even the issue of arbitrability."). Such an agreement to arbitrate threshold arbitrability questions "is simply an additional, antecedent agreement the party seeking arbitration asks" the court to enforce. *Rent-A-Center*, 561 U.S. at 69. This agreement is often referred to as a delegation provision, and it "gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111-12 (2019).

¶33     Courts, however, should not assume that parties agreed to arbitrate threshold arbitrability questions "unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original; citation omitted). Accordingly, unless the parties have clearly and unmistakably agreed to arbitrate threshold arbitrability questions, it is the court, and not the arbitrator, who decides those questions. *Rent-A-Center*, 561 U.S. at 69 n.1; *Midwest Neurosciences Assocs.*, 384 Wis. 2d 669, ¶42.

¶34     In this case, OptumRx contends that the delegation provision in both the Provider Agreements and the Amended Pharmacy Manual is clear and

unmistakable because the language in those agreements clearly delegates arbitrability questions to the arbitrator and incorporates the American Arbitration Association ("AAA") Commercial Rules. For the reasons explained below, we examine the language in the Amended Pharmacy Manual to determine whether the parties clearly and unmistakably agreed to delegate arbitrability questions to the arbitrator. Because this determination involves contract interpretation, we apply our general contract principles.

¶35    When interpreting a contract, we generally seek to give effect to the parties' intentions. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586. If the contract's terms are clear and unambiguous, "we construe the contract according to its literal terms," presuming "that the parties' intent is evidenced by the words they chose." *Id.*, ¶26 (citation omitted). Thus, we construe contract language "according to its plain or ordinary meaning" and "consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Id.*, ¶28 (citation omitted). If a contract's terms are ambiguous, then extrinsic evidence may be used to determine the parties' intent. *Id.*, ¶27.

¶36    Here, the language in the Amended Pharmacy Manual clearly and unmistakably shows that the parties agreed to arbitrate threshold arbitrability questions. The manual's delegation provision states that "any and all issues, disputes or controversies between [the parties] … including, but not limited to all questions of arbitrability … shall be resolved exclusively by binding arbitration." Although the provision begins with the phrase "the parties will work in good faith … to resolve," the language that follows clearly shows the parties' agreement to arbitrate "all questions of arbitrability." Further evidence of the parties' agreement to delegate the arbitrability question to the arbitrator is the provision's

incorporation of the AAA Commercial Rules. We have previously held that incorporating these rules into an arbitration agreement suggests that the parties intended to leave the question of arbitrability of their claims to an arbitrator. *See Mortimore v. Merge Techs., Inc.*, 2012 WI App 109, ¶20, 344 Wis. 2d 459, 824 N.W.2d 155.

¶37 Additional evidence of the parties' intent to delegate questions of arbitrability to the arbitrator is found in a different part of the Amended Pharmacy Manual's dispute resolution section. This provision states that the parties waive their rights to litigate disputes in court and their right to a trial by judge or jury, and, in bold text, provides that the parties waive these rights "by agreeing that all disputes must be resolved exclusively in arbitration." (Formatting altered.) In short, the provisions in the Amended Pharmacy Manual's dispute resolution section clearly and unmistakably show that the parties intended to delegate arbitrability questions to the arbitrator.

¶38 The Pharmacies do not argue that the delegation provision's language is ambiguous or that it does not clearly and unmistakably show the parties agreed to arbitrate arbitrability. The Pharmacies instead contend that there is a conflict between the previous versions of the Pharmacy Manual and the Amended Pharmacy Manual. They assert that the previous versions of the manual did not delegate arbitrability disputes to the arbitrator, while the amended manual did so. Therefore, they contend, pursuant to *Midwest Neurosciences Associates*, that only a court can decide whether the delegation provision in the Amended Pharmacy Manual applies to the Pharmacies' claims that accrued prior to 2020.

¶39 Unlike *Midwest Neurosciences Associates*, however, there is no conflict between the manuals at issue here. In that case, a conflict arose between

18

an operating agreement that contained an arbitration provision and a subsequent agreement that did not contain one at all. *Midwest Neurosciences Assocs.*, 384 Wis. 2d 669, ¶¶13, 22, 50. Midwest alleged a breach of a noncompete covenant under the operating agreement and moved to compel arbitration pursuant to that agreement, arguing that "there was never a meeting of the minds" on the subsequent agreement and that it never signed the subsequent agreement. *Id.*, ¶¶30-31. Because there was a question of which of the two agreements controlled, our supreme court concluded that Midwest failed to show a clear and unmistakable intent to arbitrate questions of arbitrability. *Id.*, ¶¶57, 65. Thus, the question of whether the parties agreed to arbitrate was for the court to decide. *Id.*, ¶65.

¶40　　In contrast, here, all versions of the Pharmacy Manual have always contained arbitration provisions, and each version of the Pharmacy Manual is incorporated and made a part of the Provider Agreement. This is not a situation in which the previous version of the Pharmacy Manual did not have any arbitration provisions and the amended version suddenly included them, as was the situation with the conflicting agreements in *Midwest Neurosciences Associates*. There is only one operative agreement here, which has always incorporated the Pharmacy Manual and its arbitration provisions. The Pharmacies agreed to be bound to each version of the Pharmacy Manual through the language in the Provider Agreements in which the Pharmacies acknowledged that the Pharmacy Manual "may change from time to time" and that "[a]ny such changes shall be binding" on the Pharmacies. Consequently, when OptumRx changed the Pharmacy Manual's arbitration provisions following the California court's conclusion that the original delegation provision was ambiguous as to who decides arbitrability, the Pharmacies were bound to those changes through their Provider Agreements and the incorporated Amended Pharmacy Manual.

19

¶41 The Pharmacies are therefore bound by the delegation provision in the Amended Pharmacy Manual, and their contention that the previous version of the manual—with an arguably ambiguous delegation provision—applies to their claims that accrued before 2020 is for the arbitrator to decide. Again, the delegation provision states that "any and all issues, disputes, or controversies between" the parties, including questions of arbitrability and the scope of the arbitration provisions, "shall be resolved exclusively by binding arbitration." Given this operative language incorporated into the parties' agreement, the delegation provision sends to the arbitrator questions of whether the Pharmacies' pre-2020 claims are subject to arbitration—an arbitrability question—and whether the amended or previous versions of the Pharmacy Manual apply to those claims—a question of scope. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) ("In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration."); *see also Moorman v. Charter Commc'ns, Inc.*, No. 18-CV-820-WMC, 2019 WL 1930116, *7 (W.D. Wis. May 1, 2019) (stating that whether the arbitration agreement covers claims that predate its effective date is for the arbitrator to consider in the first instance).

¶42 In sum, the Amended Pharmacy Manual's language clearly and unmistakably shows that OptumRx and the Pharmacies agreed to arbitrate arbitrability questions. Given the delegation provision—by which the Pharmacies are bound through the incorporation of the Amended Pharmacy Manual into the Provider Agreements—there is no conflict that a court must resolve. Accordingly, the question of whether the parties agreed to arbitrate threshold questions of arbitrability was for the arbitrator, and not the circuit court, to decide.

¶43    This conclusion also applies to the Smith Pharmacy, given that the pharmacy was affiliated with Elevate between 2013 and 2018, prior to the changes to the Pharmacy Manual.  Because the pharmacy contracted with a different PSAO after 2018 and that PSAO's Provider Agreement did not include the same provisions as the Elevate Agreement, the Amended Pharmacy Manual's arbitration provisions control.  Thus, it would be for the arbitrator to decide whether the Amended Pharmacy Manual applies to the Smith Pharmacy's pre-2020 claims, given that the Elevate Agreement clearly states that it controls when there is a conflict with the Pharmacy Manual.  The circuit court failed to account for the fact that the Smith Pharmacy was affiliated with Elevate until 2018, but the Smith Pharmacy then became affiliated with a different PSAO and subject to a Provider Agreement that did not exclude arbitration provisions.[8]

## II.  The Pharmacies' Challenge to the Delegation Provision

¶44    Although an arbitration agreement may clearly and unmistakably show that the parties agreed to delegate arbitrability questions to the arbitrator, if the party resisting arbitration specifically challenges that provision, then a court must determine whether the provision delegating such authority to the arbitrator is itself valid or enforceable.  *See **Rent-A-Center***, 561 U.S. at 71-72.  The Pharmacies acknowledge that the Amended Pharmacy Manual contains a delegation provision that binds the Pharmacies, but they argue that they

---

[8] On this record, there appears to be one pharmacy, the Marinette-Menominee Pharmacy, that would not be subject to either version of the Pharmacy Manuals, given that its Provider Agreement states that its terms control in the event of a conflict with the manual.  *See supra* ¶7, n.1.  Neither party discusses this specific Provider Agreement, and the Pharmacies do not make an argument regarding the potential conflict between that Provider Agreement and the Pharmacy Manuals.  Because we are remanding to the circuit court to determine the enforceability of the delegation provision, this potential conflict is one for the court to consider in its determination.

specifically challenged the delegation provision and that the circuit court's unconscionability findings regarding the parties' entire arbitration agreement necessarily apply to the delegation provision as well. The Pharmacies further contend that they may challenge the delegation provision on the same grounds as the entire arbitration agreement, as long as those grounds as applied to the delegation provision render that provision unconscionable.

¶45 In response, OptumRx argues that the Pharmacies did not specifically challenge the delegation provision because "they attacked provisions" outside the delegation provision instead of arguing, for example, that "the one-sentence delegation [provision] is too complex or they lack education to understand it." Because the Pharmacies' arguments relate only to arbitration provisions other than the delegation provision, OptumRx asserts that those arguments must be presented to the arbitrator.

¶46 Both the Pharmacies and OptumRx recognize the rule from *Rent-A-Center* that when a party challenges the validity or enforceability of "the precise agreement to arbitrate at issue" or the delegation provision, a court must consider that challenge before ordering compliance with the agreement. *See Rent-A-Center*, 561 U.S. at 71. Both also cite cases from different United States Courts of Appeals, which we discuss below, that support their respective arguments. These cases rely on *Rent-A-Center* to provide guidance on when a court may consider a challenge to a delegation provision in an arbitration agreement.

A. *General Legal Principles*

¶47 The United States Supreme Court has recognized two types of challenges to arbitration agreements, with one challenging "specifically the

22

validity of the agreement to arbitrate" and the other challenging "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." ***Buckeye Check Cashing, Inc. v. Cardegna***, 546 U.S. 440, 444 (2006). Courts may consider the first type of challenge, but not the second type. *See id.* at 449. This result flows from the rule that an arbitration provision is severable from the rest of a contract. *Id.* at 445; *see also* ***Rent-A-Center***, 561 U.S. at 70 (explaining that the FAA "states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained" (citation omitted)). Thus, "unless the challenge is to the arbitration clause itself, the issue of a contract's validity is considered by the arbitrator in the first instance." ***Buckeye***, 546 U.S. at 445-46.

¶48    In ***Rent-A-Center***, the Supreme Court concluded that the same principle applies when a party challenges an arbitration agreement with a delegation provision. *See* ***Rent-A-Center***, 561 U.S. at 72. In that case, a former employee filed an employment discrimination suit against his former employer. *Id.* at 65. The former employer moved to compel arbitration pursuant to an agreement signed as a condition of the former employee's employment. *Id.* The agreement included a delegation provision stating that the arbitrator had "exclusive authority to resolve any dispute relating to the … enforceability … of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 68. Noting the above severability principle, the Court stated that if a party challenges the validity of "the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Id.* at 70-71.

23

¶49 The Court recognized that in some cases the "basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate." *Id.* at 71. In cases where the basis for the invalidity of the contract as a whole equally applied to the agreement to arbitrate that is part of that contract, the Court explained that it "nonetheless require[s] the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* When the agreement to arbitrate is itself the underlying contract and it includes a delegation provision, as was the agreement in *Rent-A-Center*, the rule remains the same. *See id.* at 71-72. In these circumstances, the delegation provision—as the additional, antecedent agreement to arbitrate within the parties' overall agreement to arbitrate—is the provision that a party must specifically challenge, given that it delegates challenges to the rest of the arbitration agreement (the agreement as a whole) to the arbitrator.

¶50 As the Court put it, "unless [the former employee] challenged the delegation provision specifically, we must treat it as valid" and enforceable, "leaving any challenge to the validity of the [arbitration] Agreement as a whole for the arbitrator." *Id.* at 72. After describing the former employee's arguments in the district court—among them an argument that the entire arbitration agreement, including the delegation provision, was unenforceable—the Court determined that the former employee had challenged only the validity of the arbitration agreement as a whole and not the delegation provision specifically. *Id.* at 72-73.

¶51 In its discussion of the former employee's substantive unconscionability arguments in the district court, the Court noted that the former employee challenged arbitration procedures "that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision." *Id.* at 74. The Court then stated that had the former

employee "challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court." *Id.* Using as an example the former employee's argument that the limitations on discovery were substantively unconscionable, the Court explained that the former employee "would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable." *Id.* But, the Court continued, the former employee had not made any arguments specific to the delegation provision and had argued only that the arbitration procedures rendered the entire arbitration agreement invalid.[9] *Id.*

¶52    It is clear from ***Rent-A-Center*** that a court itself may consider a specific challenge to a delegation provision within an arbitration agreement. It follows that if such a challenge is successful and a court finds the provision to be invalid or unenforceable, the court may then consider a challenge to the entire arbitration agreement, given that an invalid or unenforceable delegation provision would not delegate challenges to the entire arbitration agreement to the arbitrator. Although ***Rent-A-Center*** makes clear that a party must make specific arguments regarding the delegation provision in order to challenge it, it does not explain what constitutes a party's sufficient effort in that regard.

¶53    OptumRx and the Pharmacies disagree about the sufficiency of the Pharmacies' specific challenge to the delegation provision. The Pharmacies rely

---

[9] The Supreme Court further noted that the former employee had not challenged the delegation provision in the United States Court of Appeals for the Ninth Circuit and that he had only challenged the provision in his brief to the Court. ***Rent-A-Center, W., Inc. v. Jackson***, 561 U.S. 63, 74-75 (2010). The Court, therefore, did not consider the merits of that challenge because it was raised too late. *Id.* at 75-76.

25

on cases from the United States Courts of Appeals for the Third, Fourth and Ninth Circuits to argue that they may challenge the delegation provision on the same grounds as the entire arbitration agreement. OptumRx, in contrast, relies on a case from the United States Court of Appeals for the Eleventh Circuit to argue that the Pharmacies may not do so and may make arguments only related to the delegation provision itself without making any reference to other provisions in the arbitration agreement. The parties do not cite, and we have not found, a Wisconsin case addressing the sufficiency of a challenge to a delegation provision in an arbitration agreement, but the cases that the parties cite, and an additional one that we have found, provide guidance on the issue.[10]

¶54 We begin with *MacDonald*, in which the Third Circuit determined, among other things, whether a borrower had specifically challenged the delegation provision in his loan agreement. *MacDonald*, 883 F.3d at 223, 226. In order to do so, the court explained that a party "must at least reference the [delegation] provision in its opposition to a motion to compel arbitration." *Id.* at 226. Citing

---

[10] We note that the Supreme Court very briefly addressed whether a party made a specific challenge to a delegation provision in *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 n.* (2024). In that case, the Court concluded that the operator of a cryptocurrency exchange platform forfeited its argument that users of the platform had not challenged the delegation provision in the district court because the operator had not raised the argument in the Ninth Circuit. *Id.* at 146, 151 n.*. The Court further concluded that the operator's argument was meritless because the users specifically challenged the delegation provision in their opposition to the operator's motion to compel arbitration by arguing that a subsequent agreement sending arbitrability disputes to the court superseded a prior agreement sending arbitrability disputes to the arbitrator, which rendered nonexistent that prior arbitration agreement delegating questions of arbitrability to an arbitrator. *Id.* at 146-147, 151 n.*.

Although the Court did not delve into the sufficiency of the users' challenge to the delegation provision, the approach in *Coinbase* is consistent with the approach taken by the cases we discuss. Therefore, it serves as additional support for the conclusion that a party must at least mention the delegation provision in its pleadings in order for a court to consider a challenge to the provision.

*Rent-A-Center*, it further explained that when a party specifically challenges a delegation provision, "a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions" but that such a challenge is insufficient when a party contests "the validity of an arbitration agreement as a whole, without specifically disputing the delegation [provision] contained therein." *MacDonald*, 883 F.3d at 226-27.

¶55    Ultimately, the Third Circuit concluded that the borrower had sufficiently contested the delegation provision, stating that the borrower's complaint and the brief opposing the lender's motion to compel explicitly referenced the provision. *Id.* at 227. Specifically, the complaint alleged that because the arbitration procedure in the loan agreement was "fabricated and illusory," any provision requiring arbitration of that issue was likewise illusory and unenforceable. *Id.* The brief similarly alleged that the delegation provision "suffer[ed] from the same defect as the arbitration provision" and included a section elaborating on that argument. *Id.*

¶56    The Fourth Circuit applied similar rules and reached the same conclusion in *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020). There, the court considered whether borrowers had sufficiently challenged a delegation provision in a loan agreement with two online lenders. *Id.* at 288, 291. Citing *MacDonald* and *Rent-A-Center*, the Fourth Circuit explained that courts have determined "a party's argument that 'the delegation clause suffers from the same defect as the arbitration provision' to be a sufficient challenge to the delegation provision itself." *Gibbs*, 966 F.3d at 291 (citation omitted). As a result, the Fourth Circuit concluded that the borrowers had challenged the delegation provision "with 'sufficient force and specificity,'" explaining that a reference to the delegation provision in their brief opposing the lenders' motion to

compel arbitration was "all that is required to mount a challenge to the delegation [provision]." ***Id.*** at 291-92. Thus, it held that the question of the provision's enforceability was for a court to decide. ***Id.*** at 292.

¶57    The Sixth Circuit reached a different conclusion regarding whether a party had specifically challenged a delegation provision in ***I.C. v. StockX, LLC***, 19 F.4th 873 (6th Cir. 2021). In that case, the court determined whether website users, who included minors, specifically challenged a delegation provision within the e-commerce website operator's terms of service. ***Id.*** at 876, 884. In opposing the website operator's motion to compel arbitration, the website users argued, among other things, that the arbitration agreement was invalid as to all users and that the delegation provision was invalid and unenforceable as to the minors under the "infancy doctrine." ***Id.*** at 878. In contrast to ***MacDonald*** and ***Gibbs***, the Sixth Circuit stated that the requirement that a party must specifically challenge a delegation provision was "not a mere pleading requirement," and the court clarified a statement made in a prior case that a party could "attack a delegation [provision] using the same arguments it raises against the entire arbitration agreement." ***StockX***, 19 F.4th at 885 (quoting ***Swiger v. Rosette***, 989 F.3d 501, 506 (6th Cir. 2021)).

¶58    Specifically, and relying on ***Rent-A-Center***, the Sixth Circuit explained that its statement "must be understood to mean that a party may challenge both the entire agreement and a delegation provision under the same *legal doctrine*. But a party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge." ***StockX***, 19 F.4th at 885. Because the website users' infancy doctrine argument applied to the validity or enforceability of the terms of service (i.e., the contract as a whole), as well as to the arbitration agreement and its delegation provision

within the terms of service, the users "were required to show that '*the basis of [their] challenge* [is] directed specifically' to the 'delegation provision.'" ***Id.*** at 885-86 (alterations in original; citation omitted). Given that the website users had "simply recycled the same arguments that pertain to the enforceability of the agreement as a whole," without specifically arguing how the infancy doctrine "*as applied* to the delegation provision rendered *that provision*" invalid, the court held that the users failed to specifically challenge the delegation provision. ***Id.*** at 886; ***Rent-A-Center***, 561 U.S. at 74. In so holding, the court noted and rejected the website users' specific arguments regarding the unconscionability of both the arbitration agreement and the delegation provision because they had failed to explain how the arguments specifically applied to the delegation provision.[11] ***StockX***, 19 F.4th at 886.

¶59 The Eleventh Circuit, in ***Attix***, similarly emphasized that before a court considers a challenge to the validity or enforceability of a delegation provision, it "should ensure that the challenge asserted *really* is about the delegation" provision. ***Attix***, 35 F.4th at 1304. There, a borrower sued his mortgage servicer for claims that arose from a mortgage payment he made through a third-party payment service provider, which required him to agree to terms and conditions, including an arbitration agreement with a delegation provision. ***Id.*** at

---

[11] Specifically, the website users argued that the arbitration agreement was procedurally unconscionable because it was an adhesion contract, it was drafted by the website operator with "boilerplate language," it contained an illusory opt-out provision with "an exacting set of instructions," and it incorporated AAA rules "as modified by [the] Agreement to Arbitrate." ***I.C. v. StockX, LLC***, 19 F.4th 873, 886 (6th Cir. 2021) (alteration in original). As to substantive unconscionability, the website users argued that the arbitration agreement and the delegation provision lacked the element of mutuality because the website operator had discretion to change the terms of service. ***Id.*** The Sixth Circuit rejected these arguments because the website users had failed to explain how the arguments specifically applied to the delegation provision and were therefore arguments for the arbitrator to consider. ***Id.***

1288. After determining that the parties had agreed to delegate questions of arbitrability to an arbitrator, the court then considered whether the borrower's challenge under the Dodd-Frank Act—which provided that a mortgage-related contract could not bar a consumer from bringing an action in court—was a specific challenge to the delegation provision. *Id.* at 1296-98, 1302, 1307.

¶60 The Eleventh Circuit explained that it was insufficient for a party to merely state that it was challenging the delegation provision because "[c]hallenging a delegation agreement is a matter of substance, not form." *Id.* at 1304. The court announced the following rule, cited by OptumRx in support of its sufficiency argument in this case: "A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *See id.* The court then provided **Rent-A-Center** as an example of an insufficient challenge to the delegation provision, given that the former employee's unconscionability challenge in that case "went to the enforceability of the parties' arbitration agreement as a whole—but *not* specifically to the enforceability of the delegation [provision]." *Attix*, 35 F.4th at 1304-05; *see also supra* ¶¶50-51. The Eleventh Circuit also provided an example of a sufficient challenge to the delegation provision in which a borrower's argument that the chosen arbitral forum did not exist applied equally to both the arbitration agreement and its delegation provision, given that "there was no one to whom the parties could delegate their threshold arbitrability issues." *Attix*, 35 F.4th at 1305-06 (citing **Parm v. National Bank of Cal.**, 835 F.3d 1332-35 (11th Cir. 2016)).

¶61 The Eleventh Circuit concluded that the borrower's argument regarding the Dodd-Frank Act was not about the enforceability of the delegation

provision but, rather, about the enforceability of the parties' arbitration agreement as a whole. *Id.* at 1306-07. It quoted the borrower's appellate brief, which described his challenge "by reference to the parties' agreement to arbitrate his claims, stating, for example, that 'the Dodd-Frank Act prohibits arbitration of [the borrower's] claims relating to [the borrower's] mortgage'" and that the Act prohibits the servicer from compelling arbitration of his claims relating to the mortgage. *Id.* at 1307. While the Dodd-Frank Act gave the borrower a right to bring his claims in federal court, the Eleventh Circuit explained that the borrower's argument disputed the enforceability of the arbitration agreement but not the delegation provision itself because the borrower failed to explain how the Dodd-Frank Act barred an arbitrator from resolving whether the parties' arbitration agreement fell within the Act's protections against arbitration. *Id.* at 1307-08. In other words, whether the borrower's claim regarding the enforceability of the arbitration agreement fell within the scope of the Act's protections was for the arbitrator to decide, given the delegation provision and the lack of language in the Dodd-Frank Act that would prohibit an arbitrator from making that decision.

¶62 The Ninth Circuit, in *Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023), noted the differences among the federal case law regarding the substance of a challenge to a delegation provision. *Id.* at 1010-11. In *Bielski*, the court had to decide, as a matter of first impression, "what a party must do to specifically challenge a delegation provision to ensure that a court can review its challenge" and "what a court may consider when evaluating the enforceability of a delegation provision." *Id.* at 1008. In making this decision, it distilled two principles from *Rent-A-Center*: (1) "a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking

the provision in its opposition to a motion to compel arbitration"; and (2) "a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Bielski*, 87 F.4th at 1009-10. Importantly, the court did not find that *Rent-A-Center* required "fashioning completely distinct arguments." *Bielski*, 87 F.4th at 1010.

¶63 Reviewing precedents from other circuits, the Ninth Circuit agreed with the rule from the Third and Fourth Circuits, describing it as "a relatively low barrier to entry." *Id.* Specifically, the Ninth Circuit stated that in those circuits, "if a party's challenge mentions and specifically relates to the validity of the delegation provision in its opposition to the motion to compel arbitration or other pleading, the federal court has a green light to consider those arguments." *Id.* It also noted the Third and Fourth Circuits' rule, mentioned in *MacDonald* and *Gibbs*, which allows a party to rely on the same arguments to challenge the arbitration agreement and the delegation provision. *Bielski*, 87 F.4th at 1010. Noting *StockX* and *Attix*, however, the Ninth Circuit further recognized that the Sixth and Eleventh Circuits require "litigants to provide more substance in their delegation provision challenge." *Bielski*, 87 F.4th at 1010-11.

¶64 Ultimately, the Ninth Circuit adopted the Third and Fourth Circuits' approach, holding that "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it," but, unlike the Sixth and Eleventh Circuits, a court is not required to "first evaluate the substance of the challenge." *Id.* at 1011. It further held "that a party may use the same arguments to challenge both the delegation provision and the arbitration agreement, so long as the party articulates why the argument invalidates each specific provision." *Id.*

32

¶65    To summarize, despite the minor split among the federal circuits regarding the sufficiency of a challenge, they ultimately have the same requirements.  First, a party must specifically challenge the delegation provision in its pleadings.  *See MacDonald*, 883 F.3d at 226; *Gibbs*, 966 F.3d at 291-92; *StockX*, 19 F.4th at 880; *Attix*, 35 F.4th at 1304; *Bielski*, 87 F.4th at 1011.  Second, a party may use the arguments challenging the arbitration agreement as a whole to challenge the delegation provision as long as those arguments are tailored to the delegation provision.[12]  *See MacDonald*, 883 F.3d at 226-27; *Gibbs*, 966 F.3d at 291; *StockX*, 19 F.4th at 885; *Attix*, 35 F.4th at 1304; *Bielski*, 87 F.4th at 1011.  Third, it is insufficient for a party to simply state that it is challenging the delegation provision for the same reasons it is challenging the arbitration agreement as a whole without elaborating on the basis for the challenge to the delegation provision.  *StockX*, 19 F.4th at 885-86; *Attix*, 35 F.4th at 1304; *Bielski*, 87 F.4th at 1011.

### B.  Application of Legal Principles to this Case

¶66    Following *Rent-A-Center* and the cases discussed above, we conclude that the Pharmacies raised allegations sufficiently challenging the Amended Pharmacy Manual's delegation provision, such that the circuit court was required to address that challenge.  The Pharmacies' brief in opposition to

---

[12] We note that neither *Rent-A-Center* nor any of the above cases support OptumRx's proposition that a party's challenge to the delegation provision is limited only to that provision's language and cannot reference other provisions in the arbitration agreement.  Indeed, *Rent-A-Center* itself used other provisions in the arbitration agreement, such as the discovery limitations, as an example of how the former employee could have challenged the delegation provision.  *See Rent-A-Center*, 561 U.S. at 74.  The Ninth Circuit also rejected a similar proposition, stating that a court must be able to consider other parts of the agreement that impact the delegation provision in order to determine its enforceability.  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023).

OptumRx's motion to grant its petition to compel arbitration contained a section challenging the delegation provision in both the Provider Agreements and the different versions of the Pharmacy Manual. Specifically, the Pharmacies argued that the delegation provisions themselves were unconscionable. They made several allegations as to procedural unconscionability, including that the delegation provisions were oppressive due to the unilateral imposition of the Pharmacy Manual without any notice or negotiation, that the provisions were "buried in an over 130-page" manual that was overly complex and included inconsistent language, and that OptumRx "did nothing to call attention to the three-arbitrator requirement."

¶67 The Pharmacies also made several allegations regarding substantive unconscionability. These allegations included that "experienced health lawyers have no experience or expertise in deciding whether contracts are unconscionable," that OptumRx "would have [the P]harmacies spend tens of thousands of dollars simply to find out whether they even belong in arbitration," and that they "must use the limited discovery allowed to cover both the unconscionability and arbitrability determinations, and the underlying liability determination." (Formatting altered.)

¶68 The Pharmacies make similar arguments regarding the delegation provision on appeal, especially with regard to procedural unconscionability. The Pharmacies specifically argue that the delegation provision was imposed unilaterally, on a "take-it-or-leave-it" basis, and retroactively. The Pharmacies' arguments regarding substantive unconscionability are more difficult to discern and distinguish from those applied to the entire arbitration agreement. However, the Pharmacies reiterate their circuit court argument regarding the arbitrators' relevant experience and the costs as applied to the delegation provision.

¶69    The Pharmacies' pleadings show arguments that are sufficiently tailored to the delegation provision. The pleadings do not merely state they are challenging the delegation provision on the same grounds as the arbitration agreement. Nor do the Pharmacies "recycle" the same arguments that pertain to the arbitration agreement as a whole and apply them to the delegation provision without elaborating. Rather, they explain why the manner in which the provision was imposed on the Pharmacies and how the provisions in the arbitration agreement as applied to the delegation provision both render that provision unconscionable. Thus, the Pharmacies sufficiently and specifically challenged the Amended Pharmacy Manual's delegation provision.

¶70    The circuit court, however, only found that the delegation provision, either in the Provider Agreements or the Amended Pharmacy Manual, was "appropriate" without addressing the Pharmacies' challenge to the provision or making any findings as to that specific challenge. The court skipped over the delegation provision entirely and considered the Pharmacies' challenge to the arbitration agreement as a whole. Given the above requirements, it was error for the circuit court to consider the challenge to the entire arbitration agreement without first addressing the Pharmacies' challenge to the delegation provision itself and determining its enforceability, which would then include OptumRx's defenses regarding the same. These matters may require factfinding. For these reasons, the court's unconscionability findings regarding the entire arbitration agreement cannot simply be applied to the delegation provision.

¶71    Because the circuit court should have addressed the Pharmacies' specific challenge to the Amended Pharmacy Manual's delegation provision, we remand the case to the circuit court to specifically address the Pharmacies' challenge and to determine, in the first instance, if the provision is enforceable.

35

To the extent the parties require further discovery, it should occur, and, if necessary, an evidentiary hearing should be conducted. If the court determines that the delegation provision is enforceable, then it must compel arbitration. If it instead determines the provision is unenforceable, the court may proceed to address the Pharmacies' challenge to the entire arbitration agreement.

*By the Court.*—Judgment reversed and cause remanded with directions.

Recommended for publication in the official reports.